# EVEREST NATIONAL INSURANCE COMPANY
**A Capital Stock Insurance Company**
**477 Martinsville Road**
**P.O. Box 830 Liberty Corner, NJ 07938-0830**

**POLICY NUMBER:  FL5EO00106-191**          **REPLACEMENT OF POLICY NUMBER: FL5EO00106-181**

# SECURITIES BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE DECLARATIONS

THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT TO THE EXTENT AS PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND PRESENTED TO THE INSURER DURING THE POLICY PERIOD OR DISCOVERY PERIOD (IF APPLICABLE) ARISING FROM WRONGFUL ACTS OCCURRING AFTER THE RETROACTIVE DATE.

THIS POLICY INCLUDES CLAIM EXPENSES WITHIN THE LIMITS OF LIABILITY. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE AMOUNTS AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS. VARIOUS PROVISIONS OF THE POLICY RESTRICT COVERAGE AND THE AMOUNTS AVAILABLE TO PAY CLAIMS, INCLUDING, WITHOUT LIMITATION, THE AGGREGATE LIMITS OF LIABILITY.

**ITEM 1.**      **NAMED ENTITY:**      Royal Alliance Associates, Inc.

              **MAILING ADDRESS:** C/O Reverence Capital
                                10 East 53rd Street, 14th Floor
                                New York, NY 10022

**ITEM 2.**      **INSUREDS' REPRESENTATIVE:** Advisor Group, Inc.

              **MAILING ADDRESS:** 10 Exchange Place, Suite 1410, Jersey City, NJ 07302

**ITEM 3.**      **POLICY PERIOD: FROM:**   12/31/19 **TO:** 12/31/2020
              (12:01 A.M. standard time at the address stated in Item 1.)

**ITEM 4.**      **POLICY AGGREGATE:** $30,000,000

**ITEM 5.**      **PREMIUM:** $7,792,965

**ITEM 6.**      **INSURER:** Everest National Insurance Company

              A.  Insurer address: 461 Fifth Avenue, 20th Floor,  New York, NY 10017
              B.  Claims address: EverestNationalNJclaim@everestre.com

**ITEM 7.**      **BROKER:**   Arthur J. Gallagher & Co.
              **ADDRESS:** 18201 Von Karman Avenue
                          Suite 200
                          Irvine, CA 92612

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

**SCHEDULE OF SUBLIMITS**

ITEM 1.   **SUBLIMIT OF LIABILITY:**

    (a) **Claims Against The Broker-Dealer:**

        (i) Coverage A(1) and A(2)

            (1) $2,000,000    each **Loss** (including **Claim Expenses**) arising from a **Claim** made solely against a **Broker-Dealer**

            (2) $30,000,000    aggregate for all **Loss** (including **Claim Expenses**) arising from all **Claims** made solely against the **Broker-Dealer**(s)

        (ii) Coverage A(3)

            (1) $2,000,000    each **Loss** (including **Claim Expenses**)

            (2) $5,000,000    aggregate for all **Loss** (including **Claim Expenses**)

    (b) **Claims Against A Registered Representative Or A Registered Representative and a Broker-Dealer:**

        (i) $2,000,000    each **Loss** (including **Claim Expenses**) arising from a Claim made against: (1) one **Registered Representative**; or (2) both one **Registered Representative** and any one **Broker-Dealer**

        (ii) $2,000,000    aggregate for all **Loss** for each **Registered Representative**

    (c) **Claims Against Multiple Registered Representative or Multiple Registered Representatives and one or more Broker-Dealer:**

        $2,000,000    or an amount equal to the aggregate of all "each **Loss**" sub-limits described in paragraph (b) above for all **Registered Representatives** in the **Claim**, whichever amount is less.

ITEM 2.   **RETENTION:**

    (a) $10,000    **Registered Representative** Life Product Retention under Coverage B

    (b) $10,000    **Registered Representative** Retention under Coverage B

    (c) $250,000    **Broker-Dealer** Retention for **Claims** under Coverage A(3)

    (d) $100,000    **Broker-Dealer** Retention for all other **Claims**

ITEM 3.   **COINSURANCE:**   0%

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**ENDORSEMENTS APPLICABLE TO THIS POLICY AS OF THE POLICY PERIOD EFFECTIVE DATE**

| | **Endorsement** | **Form Number** |
|---|---|---|
| 1. | Listed Broker-Dealer Endorsement | SBD CWX002A-1 0117 |
| 2. | Life Settlements Endorsements | SBD CWM001A-1 0117 |
| 3. | Terrorism Exclusion | SBD CWM002A-1 0117 |
| 4. | Trade Error Correction Extension (With Separate Retention and Sublimit) | SBD CWX003A-1 0117 |
| 5. | Vicarious Liability Endorsement Referring Certified Public Accountant | SBD CWX004A-1 0117 |
| 6. | Improper Mutual Fund and Variable Annuity Practices Endorsement | SBD CWM003A-1 0117 |
| 7. | Vicarious Liability Extension for Investment Advisor Solicitors | SBD CWM004A-1 0117 |
| 8. | Vicarious Liability Extension for Financial Institutions | SBD CWM005A-1 0117 |
| 9. | Specific Individual and/or Entity Exclusion | SBD CWX005A-1 0117 |
| 10. | Bramco / Lifemark Endorsement | SBD CWX006A-1 0117 |
| 11. | Outside Registered Investment Advisor Endorsement | SBD CWM006A-1 0117 |
| 12. | Prior Broker Dealer Coverage for Registered Representatives | SBD CWX007A-1 0117 |
| 13. | Exclusion (q) Amended | SBD CWX008A-1 0117 |
| 14. | First Enrollment Date Definition Amended | SBD CWX009A-1 0117 |
| 15. | Amend Insuring Agreement Coverage A(3) | SBD CWM007A-1 0117 |
| 16. | Transfer Fraud Exclusion | SBD CWM008A-1 0117 |
| 17. | Selling Away Exclusion for Previously Known Incidents | SBD CWM009A-1 0117 |
| 18. | Professional Services Definition Amended | SBD CWX010A-1 0117 |
| 19. | Claim Expenses, Settlements, Judgments (Including Advancement of Claim Expenses) Clause Amended | SBD CWX011A-1 0117 |
| 20. | Loss Definition Amended | SBD CWX012A-1 0117 |
| 21. | Amend Regulatory Coverage Extension | SBD CWM010A-1 0117 |
| 22. | Notice and Reporting Period Amended | SBD CWM011A-1 0117 |
| 23. | Additional Broker-Dealer Endorsement | SBD CWM012A-1 0117 |
| 24. | Broker-Dealer Definition Amended | SBD CWX013A-1 0117 |
| 25. | Other Insurance Clause Amended | SBD CWX014A-1 0117 |
| 26. | New York Amendatory Cancellation and Nonrenewal | SBD NYM001A-1 0117 |
| 27. | New York Amendatory Endorsement - Discovery Clause | SBD NYM002A-1 0117 |
| 28. | New York Amendatory Endorsement - Transfer of Duties When a Limit of Insurance is Used Up | SBD NYM003A-1 0117 |
| 29. | New York Claims-Made Amendatory Endorsement | SBD NYM004A-1 0117 |
| 30. | New York Amendatory Endorsement – NY Statute 3420 | SBD NYM005A-1 0117 |
| 31. | New York Regulation 121 Addendum to the Declarations | SBD NYM006A-1 0117 |
| 32. | Amend Limit of Liability for Life Products | SBD CWX015A-1 0117 |
| 33. | Exclusion (f) Amended | SBD CWX016A-1 0117 |
| 34. | Definition of Loss Amended (Travel Expenses) | SBD CWM042A-1 0218 |
| 35. | Recruitment & Solicitation Coverage Endorsement (Claims Expenses Only) | SBD CWX019A-1 0218 |
| 36. | Signator Exclusion Endorsement | SBD CWX020A-1 0218 |
| 37. | Prior Broker-Dealer Coverage For Former Signator Investors, Inc. Registered Representatives | SBD CWM048A-1 0119 |

**THESE DECLARATIONS, TOGETHER WITH THE SECURITY BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE POLICY AND ANY ENDORSEMENT(S) AND THE APPLICATION, CONSTITUTE THE ABOVE NUMBERED POLICY.**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

This policy is signed by officers of the Company shown on the Declarations page of this policy.

For:      Everest National Insurance Company

_____          _____
President                                                        Secretary

**EVEREST NATIONAL INSURANCE COMPANY**
**A Capital Stock Insurance Company**
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830

## SECURITIES BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE POLICY

**Important Notice**

THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT TO THE EXTENT AS PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND PRESENTED TO THE INSURER DURING THE POLICY PERIOD OR DISCOVERY PERIOD (IF APPLICABLE) ARISING FROM WRONGFUL ACTS OCCURRING AFTER THE RETROACTIVE DATE.

THIS POLICY INCLUDES CLAIM EXPENSES WITHIN THE LIMITS OF LIABILITY. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE AMOUNTS AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS. VARIOUS PROVISIONS OF THE POLICY RESTRICT COVERAGE AND THE AMOUNTS AVAILABLE TO PAY CLAIMS, INCLUDING, WITHOUT LIMITATION, THE AGGREGATE LIMITS OF LIABILITY.

In consideration of the payment of the premium, and in reliance upon all information provided to and statements made to the **Insurer**, and subject to all terms, conditions and limitations of the Policy, including those in the declarations,  the **Insureds** and the **Insurer** agree as follows:

1. **INSURING AGREEMENTS**

    **COVERAGE A: Securities Broker-Dealer Errors & Omissions**

    The **Insurer** will pay on behalf of a **Broker-Dealer** all **Loss** arising from a **Claim** first made against such **Broker-Dealer** during the **Policy Period**, or if applicable, the **Discovery Period**, and reported pursuant to Clause 9. Notice and Reporting, for any **Wrongful Act** committed by the **Broker-Dealer.**

    (1) in the rendering of or failure to render **Professional Services** by the **Broker-Dealer**;

    (2) in **Failing to Supervise** a **Registered Representative**, or a **Former Registered Representative**, in the rendering of or failure to render **Professional Services** by such **Registered Representative**; or

    (3) in **Failing to Supervise** a **Registered Representative**, or a **Former Registered Representative**, in connection with any activity of such **Registered Representative**, other than the rendering of or failure to render **Professional Services** by such **Registered Representative**, unless otherwise excluded under this policy.

    **COVERAGE B: Registered Representative Errors & Omissions**

    The **Insurer** will pay on behalf of a **Registered Representative**  all **Loss** arising from a **Claim** first made against such **Registered Representative** during the **Policy Period**, or if applicable, the **Discovery Period**, and reported pursuant to Section 9. Notice and Reporting, for any **Wrongful Act** committed by the **Registered Representative** but only if such **Wrongful Act** occurs in the rendering of or failure to render **Professional Services**.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

2. **DEFINITIONS**

(a) **"Approved Product"** means any:

    (1) securities, including investment companies, variable annuities or variable life insurance products, that are approved by, and offered for sale through, the **Broker-Dealer**; or

    (2) **Life Product** offered for sale by an insurance company;

(b) **"Approved Activity"** means a service or activity performed by a **Registered Representative**:

    (1) which has been approved by the **Broker-Dealer** to be performed by the **Registered Representative**; and

    (2) which is performed in connection with the purchase or sale of an **Approved Product** to be transacted through the **Registered Representative**; and

    (3) for which the **Registered Representative** has obtained all licenses required by the **Broker-Dealer**, an insurance carrier, or applicable law or regulation.

(c) **"Broker-Dealer"** means (1) any entity set forth as such in any endorsement to this policy; (2) any **Subsidiary** and any Office of Supervisory Jurisdiction ("OSJ") of such entity described in subparagraph (1) as a **Broker-Dealer**; (3) any past, present or future director, officer, partner or employee of the **Broker-Dealer** acting in their capacity as such; and (4) any past, present or future registered principal of an OSJ acting in their capacity as such.

(d) **"Certificate"** means the ACORD form issued to or for the benefit of a **Registered Representative** by the Broker listed in Item 7. of the Declarations memorializing such **Registered Representative's** enrollment for coverage under this policy and the applicable **Sublimit of Liability** selected for such coverage and applicable Retention amounts.

(e) **"Claim"** means the following if brought by an **Insured's** customer or client in their capacity as such:

    (1) a written demand for monetary relief; or

    (2) a civil or arbitration proceeding for monetary relief which is commenced by:

        (i) service of a complaint or similar pleading; or

        (ii) receipt or filing of an arbitration demand or statement of claim.

**"Claim"** shall also include a **Disciplinary Proceeding** against a **Registered Representative**, but solely with respect to **Claim Expenses** incurred by such **Registered Representative** in connection with such **Disciplinary Proceeding**. **Claim Expenses** incurred in connection with a covered **Disciplinary Proceeding**, shall be subject to an aggregate **Sublimit of Liability** of $25,000 per **Registered Representative**, which amount shall be part of, and not in addition to, the **Sublimit of Liability** set forth in Item 1.(b) of the Schedule of Sublimits, selected and purchased by the **Registered Representative**.

(f) **"Claim Expenses"** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured**. **Claim Expenses** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first reported to the **Insurer**.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(g)   "**Disciplinary Proceeding**" means any action brought by a governmental or regulatory authority or self-regulatory body to investigate an actual or alleged **Wrongful Act** of an **Insured** in the rendering of or failure to render **Professional Services**.

(h)   "**Discovery Period**" means any **Optional Discovery Period**, **Terminated Registered Representative Discovery Period** or **Retired/Deceased/Disabled Registered Representative Discovery Period** as such terms are defined in Clause 12. of this policy.

(i)   "**Enforcement Body**" means: (1) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (2) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

(j)   "**Entity Insured**" means any **Broker-Dealer.**

(k)   "**Failing to Supervise**" means the failure to create, implement, enact or enforce any applicable supervisory procedures required by law, common or statutory, regulation, governmental authority or regulatory authority or self-regulatory authority, including but not limited to the procedures established by **FINRA**, as outlined in Section 3110 of the FINRA Manual, and any amendments thereto.

(l)   "**Financial Insolvency**" means: (1) entering into proceedings in bankruptcy; (2) becoming a debtor in possession; or (3) the taking of control, the supervision of or the managing or liquidation of the financial affairs of an entity by a receiver, conservator, liquidator, trustee, rehabilitator or similar official.

(m)   "**FINRA**" means the Financial Industry Regulatory Authority.

(n)   "**First Enrollment Date**" means the date that a **Registered Representative** first enrolled for coverage under this policy, or under a prior policy issued by the **Insurer**, or any of its affiliates, and continuously renewed and maintained in effect prior to the inception of this policy.

(o)   "**Foreign Jurisdiction**" means any jurisdiction, including any territory or possession of the United States of America, but not the United States of America.

(p)   "**Former Registered Representative**" means any individual who does not qualify as a **Registered Representative** under this policy, but who qualified as an "insured" under any securities broker-dealer professional liability policy issued to the "Entity Insured" to which this policy is a renewal, replacement or succeeds in time, by virtue of such individual qualifying as a "registered representative," as such terms are defined under any such other policy.

(q)   "**Insured**" means:

(1)   any **Entity Insured**;

(2)   any **Registered Representative**;

(r)   "**Interrelated Wrongful Acts**" means **Wrongful Acts** which are the same, related or continuous, or **Wrongful Acts** which arise from the same, related or common nexus of facts regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.  Further, and without limiting the aforementioned, the following **Claims** shall automatically be deemed to allege **Interrelated Wrongful Acts**:

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(1) **Claims** in connection with securities of any entity (or affiliated entities) which become(s) the subject of any **Financial Insolvency** proceeding;

(2) **Claims** in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated entities;

(s) "**Investment Advisory Services**" means the following services rendered by an investment advisor representative, pursuant to a written agreement between the **Broker-Dealer** and the customer or client: providing financial, economic or investment advice or investment management services, but only if the investment advisor representative received approval from the **Broker-Dealer** prior to rendering such services. Further, with respect to the foregoing services, when in connection with the purchase or sale of an investment and/or insurance product, such product must qualify as an **Approved Product**.

(t) "**Investment Banking Activity**" means, the underwriting, syndicating or promotion or any security or partnership interest in connection with any of the following:  any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity, or effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the **Insured** for  its own account, or any activity by an **Insured** as a specialist or market maker (including the failure to make a market) for any securities, or any disclosure requirements in connection with any of the foregoing.  **Investment Banking Activity** also includes the rendering of advice or recommendations or the rendering of a written opinion in connection with any of the foregoing.

(u) "**Life Product**" means any life, accident, health, fixed annuity, long-term care or disability insurance product.

(v) "**Loss**" means damages, judgments, settlements and **Claim Expenses**; however, **Loss** shall not include:

(1) salaries of any **Insured**;

(2) the cost of complying with non-monetary or injunctive relief;

(3) civil or criminal fines or penalties, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which  the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.  Notwithstanding the foregoing, **Loss** shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than 2X the amount of compensatory damages awarded; and

(4) fees, commissions, or other compensation for any **Professional Services** rendered or required to be rendered by the **Insured** or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation.

**Loss** arising from **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed a single **Loss** under this policy.

(w) "**Policy Period**" means the period from the inception date shown in the policy Declarations to the earlier of the expiration date shown in the Declarations or the effective date of cancellation of this policy.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(x)   **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(y)   **"Professional Services"** means:

    (1)   if rendered in connection with an **Approved Activity**:

        (i)   the purchase or sale of securities, including investment companies, variable annuities or variable life insurance for or on the behalf of a customer or client of the **Broker-Dealer** pursuant to a written agreement between the **Broker-Dealer** and the customer or client; or
        (ii)   the purchase or sale of any **Life Product;**

    (2)   providing brokerage services for individual retirement accounts, Keogh retirement plans and employee benefit plans (but excluding in all cases multiple employer or multi-employer welfare arrangements), but only when such plans are funded with the products identified in subparagraph (1) above;

    (3)   **Investment Advisory Services**; and

    (4)   in connection with or incidental to any of the foregoing activities set forth in subparagraphs (1) and (2) above, providing:

        (i)   economic advice or financial advice;

        (ii)   financial planning advice, including, without limitation, any of the following activities in conjunction therewith:  the preparation of a financial plan or personal financial statements, the giving of advice relating to personal risk management, insurance, savings, investments, retirement planning or taxes; or

        (iii)   services in the capacity as a notary public;

provided that, in all cases, the **Registered Representative** has obtained all relevant licenses required by the **Broker-Dealer**, an insurance carrier, or applicable law or regulation.

(z)   **"Registered Representative"** means:

    (1)   an individual who (i) is registered with **FINRA** and who for compensation engages in the business of rendering **Professional Services**; or is a licensed investment advisor representative and who for compensation engages in the business of rendering **Investment Advisory Services**, while contracted by the **Broker-Dealer**; (ii) has elected to enroll for coverage under this policy and has paid any applicable premium and surcharges; (iii) is listed on the **Schedule of Registered Representative**; and (iv) has been issued a **Certificate** or for whom a **Certificate** is otherwise available with the **Insureds' Representative** or **Named Entity**;

    (2)   any corporation, partnership, or other business entity engaging in **Professional Services** which is either owned or controlled by a natural person in (1) above or in which a natural person in (1) above is an employee and then only with respect to these operations of the corporation, partnership or other business entity directly related to the **Professional Services** provided by the natural person in (1) above; provided that this extension shall not afford coverage for any **Wrongful Acts** of the corporation, partnership, or other business entity, but shall only apply to **Claims** arising out of any **Wrongful Acts** of a natural person in (1) above; and

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(3)   any natural person who was or is a partner, officer, director, or employee of (1) or (2) above solely while acting within the scope of his/her duties as such and provided such natural person did not receive any commission income pursuant to an agent, broker or registered representative contract with any insurance company or broker-dealer as a result of providing **Professional Services** offered by the **Registered Representative**.

In all events, coverage as is afforded under this policy with respect to a **Registered Representative** shall only apply to **Wrongful Acts** first occurring on or after the **Retroactive Date** and prior to the time such **Registered Representative** ceases to be a **Registered Representative**.

(aa)   "**Retroactive Date**" means:

(1)   with respect to each **Broker-Dealer**, the date set forth as such in any endorsement to this policy; and

(2)   with respect to a **Registered Representative**, the first date of a continuous contract between such **Registered Representative** and the **Broker-Dealer.**

(bb)   "**Schedule of Registered Representative**" means the schedule maintained by the Broker listed in Item 7. of the Declarations, which shall be made available to the **Insurer** at any time upon its request.  The **Schedule of Registered Representative** shall list the name of each **Registered Representative**, and shall include the following information relative to each such **Registered Representative**: (1) the complete address of such **Registered Representative's** primary place of business; and (2) the **Sublimit of Liability** option selected by such **Registered Representative**.

(cc)   "**Settlement Opportunity**" means a settlement within the policy's applicable **Sublimit of Liability** that is recommended by the **Insurer** and is acceptable to the claimant.

(dd)   "**Sublimit of Liability**" means the applicable amount(s) stated in the **Schedule of Sublimits**  or stated in any endorsement to this policy, which amounts shall be part of, and not in addition to, the **Policy Aggregate**.

(ee)   "**Subsidiary**" means:

(1)   an entity of which the **Broker-Dealer** owns, on the inception date of the **Policy Period**, more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**;

(2)   automatically an entity created or acquired during the **Policy Period** if the number of registered representatives of such other corporation total less than fifteen percent (15%) of the total number of **Registered Representatives** of the **Broker-Dealer** as of the inception date of this policy.  The **Broker-Dealer** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; and

(3)   an entity which becomes a **Subsidiary** during the **Policy Period** (other than an entity described in subparagraph (2) above), but only upon the condition that within ninety (90) days of its becoming a **Subsidiary**, the **Insureds' Representative** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and/or amendment of the provisions of this policy required by the **Insurer** relating to such new **Subsidiary**.

An entity becomes a **Subsidiary** when the **Broker-Dealer** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**.  An entity ceases to be a **Subsidiary** when the **Broker-Dealer** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

In all events, coverage as is afforded under this policy with respect to a **Claim** made against a **Subsidiary** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceases to be a **Subsidiary**.

(ff) "**Transaction**" means:

(1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

(2) any person or entity or group of persons or entities acting in concert acquiring an amount of the outstanding securities representing more than fifty percent (50%) of the voting power for the election of directors of the **Named Entity** or the voting rights of such an amount of such securities; or

(3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity**.

(gg) "**Wrongful Act**" means any actual or alleged act, error or omission by the **Broker-Dealer**, any director, officer, partner or employee thereof, or by any **Registered Representative**, in their respective capacities as such.

## 3. EXCLUSIONS

The **Insurer** shall not be liable for **Loss** in connection with any **Claim**:

(a) alleging, arising out of, based upon or attributable to the committing in fact of any criminal, dishonest, malicious, knowingly wrongful or fraudulent act committed by or at the direction of an **Insured**, or any willful violation of any statute, rule or law;

(b) alleging, arising out of, based upon or attributable to any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (as amended), 18 USC Sections 1961 et seq., as amended, or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

(c) alleging, arising out of, based upon or attributable to the gaining of any profit or advantage to which an **Insured** was not legally entitled, including, but not limited to, any actual or alleged commingling of funds or accounts;

For the purposes of determining the applicability of the foregoing Exclusions 3(a), 3(b) and 3(c), the **Wrongful Act** of any **Registered Representative** shall not be imputed to any other **Registered Representative**.

(d) for any bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible or intangible property, including the loss of use thereof, or the loss of use of tangible or intangible property which has not been damaged or destroyed; provided, however, this exclusion shall not apply to a **Claim**, in part, for emotional distress, if such **Claim** is otherwise covered under this policy;

(e) alleging, arising out of, based upon or attributable to the **Financial Insolvency** of, or suspension of payment or inability or refusal to pay by, any broker or dealer in securities or commodities, clearing agency, bank or banking firm, insurance or reinsurance entity, any **Insured**, benefit plan, trust or investment vehicle, or any entity in which an **Insured** has placed or invested funds or obtained coverage for a client; provided, however, this exclusion will not apply:

(1) to **Wrongful Acts** in connection with any **Insured's** investment on the behalf of the claimant in the securities of any of the foregoing entities; or

(2) if, at the time coverage was obtained, such insurance or reinsurance entity was rated "A-" or better as per A.M. Best Company;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(f)     alleging, arising out of, based upon or attributable to: (1) any pension, welfare or other employee benefit plan or trust sponsored by any **Insured** or sponsored by any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any **Insured**, or in which any **Insured** has a financial interest; or (2) any plan in which an **Insured** is a participant or is a "named fiduciary;" as defined in section 402(a) of the Employee Retirement Income Security Act of 1974 (and any amendments thereto);  or (3) arising out of, based upon or attributable to any services performed by any **Insured** acting in fact as a trustee or administrator under the Employee Retirement Income Security Act of 1974 (and any amendments thereto);

(g)     alleging, arising out of, based upon or attributable to:

   (1)   any business interference with clients' lists; or

   (2)   any fees, commissions, brokerage monies or other charges for any **Professional Services**; or

   (3)   any contract dispute between any **Insureds**, or between the **Insureds** and any other entities, insurance companies or securities broker-dealers;

(h)     alleging, arising out of, based upon or attributable to, in whole or in part, any **Investment Banking Activity** by any **Insured**; provided, however, this exclusion shall not apply to **Claims** arising from sales by an **Insured** to a particular client or customer of an open-ended investment company or variable annuity which alleges that a client or customer of an **Insured** was unsuitable for and wrongfully placed into such investment company or variable annuity;

(i)     brought by or on behalf of any **Insured**, or the successors or assigns of any **Insured**; or by or on behalf of any enterprise, trust or other entity that is operated or managed or owned, directly or indirectly, in whole or in part, by any **Insured**; or for which any **Insured** is a trustee, director or officer thereof; provided, however, this exclusion shall not apply to **Claims** brought by an **Insured** against a **Registered Representative** in its capacity as a customer or client;

(j)     alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Interrelated Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(k)     brought by or on behalf of any clearing agency, or alleging, arising out of, based upon or attributable to any function of any **Insured** as a clearing agency;

(l)     alleging, arising out of, based upon or attributable to any:

   (1)   use by any **Insured** of; or

   (2)   aiding or abetting by any **Insured** in the use of; or

   (3)   participating after the fact by any **Insured** in the use of;

   non-public information in a manner prohibited by the laws of the United States, including, but not limited to:  the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended), and Rule 10(b)(5) thereunder, and/or the laws of any state, commonwealth, territory or subdivision thereof, or the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(m)  alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown or malfunction of machines or systems;

(n)  brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any state or federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), whether directly or indirectly, and whether brought in its capacity as trustee, liquidator, successor or assignee of an **Insured**, or in any other capacity and whether brought in its own name or in the name of any other entity; provided, however, this exclusion will not apply to: (1) any **Claim** brought solely in such Governmental Entity's capacity as a customer or client of an **Insured** in the ordinary course of business and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**; or (2) **Claim Expenses** of a **Registered Representative** in connection with a covered **Disciplinary Proceeding**;

(o)  for any **Wrongful Act** in the rendering of or failure to render **Professional Services** to any securities broker-dealer; however, this exclusion shall not apply if the **Professional Service** is solely the purchase or sale of securities to such broker-dealer for its own account;

(p)  alleging, arising out of, based upon or attributable to the rendering of or failure to render any of the following services or activities:  third party claims administrator, actuarial, accounting, legal, real estate agent or broker, or tax preparation or appearing before the Internal Revenue Service as an enrolled agent, or tax advice, except tax advice as an incidental part of **Professional Services** rendered by a  **Registered Representative**;

(q)  alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith:

    (1)  any equity security priced under $5.00 at the time that the **Wrongful Act** triggering such **Claim** arose; however, this exclusion shall not apply if the security is:

        (i)  registered, or approved for registration upon notice of issuance, on a national securities exchange;

        (ii)  authorized, or approved for authorization upon notice of issuance, for quotation in the NASDAQ National Market System or the NASDAQ Capital Markets; or

        (iii)  issued by an investment company registered under the Investment Company Act of 1940 (as amended);

    (2)  commodities, futures contracts, forwards contracts or any type of option or futures contract except;

        (i)  buying of puts or calls; or

        (ii)  selling of covered call options;

    (3)  any collectible, including but not limited to stamps, art, cards, jewelry, antiques or any other tangible personal property;

    (4)  any security in any market outside of the United States of America and its territories and possessions and Canada;

    (5)  annuities used in connection with any structured settlement;

    (6)  viatical products, including viatical settlement and viatical contracts;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(7)     life settlements; or

(8)     promissory notes, structured notes, principal protected notes, exchange traded notes, leveraged exchange traded funds, inverse exchange traded funds, ;

(r)     alleging, arising out of, based upon or attributable to an **Insured** making or stating any promises or guarantees as to interest rates or market values;

(s)     alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, the formation, operation, administration or management by an **Insured**, in whole or in part, of any entity other than an **Entity Insured**, including without limitation limited partnerships or general partnerships, including but not limited to **Claims** arising out of an **Insured** acting as a general partner of any limited partnership and/or managing general partner of any general partnership;

(t)     alleging, arising out of, based upon or attributable to any liability assumed by an **Insured** under any indemnification contract or agreement, either oral or in writing;

(u)     alleging, arising out of, based upon or attributable to, directly or indirectly, any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

(v)     alleging, arising out of, based upon or attributable to any obligation of the **Insured,** pursuant to any employee benefits, wages, salaries, bonuses, commissions, workers compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar benefits or compensation;

(w)     alleging, arising out of, based upon or attributable to any one or more of the following:

(1)     any failure or refusal to pay, or delay in the payment of, benefits due or alleged to have been due under any insurance contract or from any pension plan or other benefit plan;

(2)     any lack of good faith or fair dealing in the handling of any claim or obligation arising out of or under any insurance contract or from any pension plan, welfare plan or other benefit plan;

(x)     alleging, arising out of, based upon or attributable to **Professional Services** in connection with investment products partially or totally owned by a **Registered Representative**;

(y)     alleging, arising out of, based upon or attributable to an **Insured** exercising discretionary authority or control with regard to management or disposition of assets; provided, however, this exclusion shall not apply to:

(1)     any **Registered Representative's** purchase or sale of mutual funds that are registered under the Investment Company Act of 1940 (as amended) or variable annuities, in which there is no initial or contingent sales charge or commission; or

(2)     any **Claim** that arises from a **Wrongful Act** in connection with **Investment Advisory Services** pursuant to a written contract defining the scope of such services and the compensation to be paid therefore;

(z)     for any publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy made by or at the direction of any **Insured** with the knowledge of the falsity thereof;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(aa)  alleging, arising out of, based upon or attributable to, any **Insured** notarizing, certifying or acknowledging any signature not made in the presence of such **Insured** at the time of such notarization, certification or acknowledgement;

(bb)  alleging, arising out of, based upon or attributable to the actual or alleged sale, attempted sale or servicing of any coverage, alleged coverage or plan placed with any form of Multiple Employer Welfare Arrangement (MEWA) as defined in the Employee Retirement Income Security Act of 1974 (and any amendments thereto); provided, however, this exclusion shall not apply to placement of coverage for a MEWA with an insurance carrier that is rated A- or better as per A.M. Best Company;

(cc)  alleging, arising out of, based upon or attributable to any solicitation or placement of property and/or casualty insurance; or

(dd)  alleging, arising out of, based upon or attributable to any act, error, omission, fact or circumstance occurring prior to the **First Enrollment Date** if, on or before the **First Enrollment Date**, a **Registered Representative** knew or reasonably could have foreseen that such act, error, omission, fact or circumstance could give rise to a **Claim**; provided, however, the knowledge or information possessed by one **Registered Representative** will not be imputed to any other **Registered Representative** for the purposes of determining the applicability of this exclusion with respect to any **Claim** made against any **Registered Representative**.

(ee)  with respect to coverage provided under Coverage A only, alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the inception date of the first securities broker-dealer's errors and omissions policy of coverage issued to or for the benefit of the **Broker-Dealer** by the **Insurer** and continuously renewed and maintained in effect thereafter to the inception date of this policy, if on or before such date any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**, or alleging, arising out of, based upon or attributable to any subsequent **Interrelated Wrongful Act**;

(ff)  with respect to coverage provided under Coverage B only, alleging, arising out of, based upon or attributable to any activity of, or service provided by, a **Registered Representative** other than a covered **Professional Service**, including, but not limited to "selling away"; or

(gg)  alleging, arising out of, based upon or attributable to any **Wrongful Act** committed or alleged to be committed directly or indirectly in connection with the sale or recommendation of any instrument issued by any limited partnership, master limited partnership, or any affiliated organization of any of the foregoing not offered and sold through the **Broker-Dealer**.

(hh)  alleging, arising out of, based upon or attributable to, directly or indirectly, the rendering of or failure to render **Investment Advisory Services** to any mutual fund, hedge fund, private equity fund, exchange traded fund, unit investment trust, collective investment trust or similar investment vehicle.

(ii)  alleging, arising out of, based upon or attributable, directly or indirectly, the theft of customer or client funds by a **Registered Representative**; provided, however, this exclusion shall not apply to **Claim Expenses** in connection with an otherwise covered **Claim** under **Coverage A.(3).**

(jj)  alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Retroactive Date**, or arising out of the same or any **Interrelated Wrongful Act**;

As respects to this Clause 3. EXCLUSIONS and any additional exclusion attached to this policy, the terms "**Registered Representative**" and "**Insured**" shall also include any **Former Registered Representative**.  It is further understood and agreed that this policy shall not pay the **Loss** of a **Former Registered Representative** arising from any **Claim** against such **Former Registered Representative**.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

4.  **COINSURANCE**

With respect to any **Claim** for which coverage is provided, in part or in whole, under Coverage A(3) of policy, the **Broker-Dealer** shall assume the percentage set forth in Item 3. of the Schedule of Sublimits of **Loss** excess of the Retention amount, it being a condition of this insurance that such percentage of each and every **Loss** shall be carried by the **Broker-Dealer** at its own risk.

5.  **LIMITS OF LIABILITY**

The **Policy Aggregate** is the **Insurer's** maximum liability for all **Loss**, arising out of all **Claims** covered under this policy and reported to the **Insurer** in accordance with the terms herein. The **Policy Aggregate** applies regardless of the number of **Insureds**, **Claims** or **Wrongful Acts**. The **Insurer** shall not be responsible to pay any **Loss** upon exhaustion of the **Policy Aggregate**. It is further understood and agreed that under no circumstance shall the inclusion herein of more than one **Insured** operate to increase the limits of the **Insurer's** liability.

All **Sublimits of Liability** shall be part of, and not in addition to, the **Policy Aggregate**. The applicable **Sublimits of Liability** shall apply to all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**.

The **Policy Aggregate** and **Sublimits of Liability** shall be reduced by **Claim Expenses** as incurred and **Loss** shall be paid in the order that the **Insurer**, in its absolute discretion, deems appropriate.  The **Sublimits of Liability** shall not, under any circumstances, serve to increase the **Policy Aggregate**.  The **Sublimits of Liability** are subject to the **Policy Aggregate** and accordingly, may not be available in whole or in part depending on the amount of reduction of the **Policy Aggregate**.  The **Insurer** shall not be obligated to defend any **Claims** or reimburse any **Insured** after the applicable **Sublimit of Liability** or **Policy Aggregate** has been exhausted, whichever occurs first.

The **Policy Aggregate** and any applicable **Sublimits of Liability** for any **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate** and any **Sublimits of Liability** for the **Policy Period**.

6.  **SUBLIMITS OF LIABILITY**

In addition to the provisions of Clause 5. LIMITS OF LIABILITY, the **Insurer's** liability for all amounts payable hereunder in settlement or satisfaction of all **Claims** (including **Claim Expenses**) covered under this policy shall be subject to one of the following **Sublimits of Liability** as described below.  All **Sublimits of Liability** shall be part of, and not in addition to, the **Policy Aggregate**. The applicable **Sublimits of Liability** shall apply to all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**.

(a)  *Sublimits of Liability for Claims against the Broker-Dealer*

(i)  <u>Coverages A(1) and A(2):</u> The **Sublimit of Liability** stated in Item 1(a)(i)(1) of the Schedule of Sublimits is the limit of the **Insurer's** liability for all **Loss** under Coverages A(1) and A(2) arising out of all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Act** that are made solely against the **Broker-Dealer**.  In the event that a **Claim** is made against one or more **Broker-Dealer** and one or more **Registered Representative**, the **Sublimit of Liability** stated in Item 1(a)(i)(1) shall not apply, even if such **Claim** is not continuously maintained against any **Registered Representative** or if the applicable **Sublimit of Liability** for such **Claim** is exhausted as a result of payment under this policy.  The **Sublimits of Liability** set forth in Items 1(b) or 1(c) of the Schedule of Sublimits shall apply to **Claims** that are made against both a **Broker-Dealer(s)** and a **Registered Representative(s),** as described more fully in paragraph (b) of this Clause 6.

The **Sublimit of Liability** stated in Item 1(a)(i)(2) of the Schedule of Sublimits is the total limit of the **Insurer's** liability for all **Loss** under Coverages A(1) and A(2) arising out of all **Claims** first made against the **Broker-**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Dealer(s)** (and not against a **Registered Representative**) during the **Policy Period** and the **Discovery Period** (if applicable) and reported to the **Insurer** in accordance with the terms herein.

The **Sublimit of Liability** stated in Item 1(a)(i)(1) shall be part of and not in addition to **Sublimit of Liability** in Item 1(a)(i)(2), as well as the **Policy Aggregate**. The **Sublimit of Liability** in Item 1(a)(i)(2) shall be part of and not in addition to the **Policy Aggregate**.

(ii) Coverage A(3): The **Sublimit of Liability** stated in Item 1(a)(ii)(1) of the Schedule of Sublimits is the limit of the **Insurer's** liability for all **Loss** under Coverage A(3) arising out of all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Act**. The **Sublimit of Liability** stated in Item 1(a)(ii)(2) of the Schedule of Sublimits is the total limit of the **Insurer's** liability for all **Loss** under Coverage A(3) arising out of all **Claims** first made against the **Broker-Dealer(s)** during the **Policy Period** and the **Discovery Period** (if applicable) and reported to the **Insurer** in accordance with the terms herein.

The **Sublimit of Liability** stated in Item 1(a)(ii)(1) shall be part of and not in addition to the **Sublimit of Liability** in Items 1(a)(ii)(2) and 1(a)(i)(2), as well as the **Policy Aggregate**. The **Sublimit of Liability** in Item 1(a)(ii)(2) shall be part of and not in addition to Item 1(a)(i)(2) and the **Policy Aggregate**.

(b) *Sublimits of Liability for Claims against Registered Representative(s) or Registered Representative(s) and Broker-Dealer(s)*

(i) The **Sublimit of Liability** stated in Item 1(b)(i) of the Schedule of Sublimits, under the applicable option selected and purchased by each such **Registered Representative**, is the limit of the **Insurer's** liability for all **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts** when a **Claim** is made against:

(1) one **Registered Representative**; or

(2) both one **Registered Representative** and any one **Broker-Dealer**.

However, if additional **Claims** are subsequently made against the **Registered Representative** and/or any **Broker-Dealer(s)**, as well as against any other **Registered Representative**, which arise out of the same **Wrongful Act** or **Interrelated Wrongful Acts** as **Claims** already made and reported to the **Insurer**, then such additional **Claims**, along with all other previously made **Claims**, shall be subject to a single **Sublimit of Liability** as stated in Item 1(c) of the Schedule of Sublimits as more fully described in subparagraph (ii) below.

(ii) The **Sublimit of Liability** stated in Item 1(c) of the Schedule of Sublimits is the limit of the **Insurer's** liability for all **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts** when a **Claim** is made against:

(1) more than one **Registered Representative**; or

(2) both more than one **Registered Representative** and any one or more **Broker-Dealer**.

This **Sublimit of Liability** shall apply and be in effect throughout the settlement and/or satisfaction of all such **Claims**, regardless of the number of **Insureds** remaining in the **Claim**. Notwithstanding the foregoing, however, under no circumstances shall the **Insurer** be liable for any **Loss** of any **Insured** arising from such **Claim(s)**, which exceeds such **Insured's** applicable "each **Loss**" **Sublimit of Liability** as set forth in Item 1(b)(i) of the Schedule of Sublimits, per the option selected and purchased by such **Registered Representative**.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(iii) The **Sublimit of Liability** stated in Item 1(b)(ii) of the Schedule of Sublimits under the applicable option selected and purchased by such **Registered Representative** is the total limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against a **Registered Representative** during the **Policy Period** and the **Discovery Period** (if applicable) and reported to the **Insurer** in accordance with the terms of this policy. This **Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate**.

The **Sublimits of Liability** in Items 1(b)(i) and 1(c) shall be part of and not in addition to the **Sublimit of Liability** set forth in Item 1(b)(ii), as well as the **Policy Aggregate**.

## 7.  RETENTION

The **Insurer** shall only be liable for the amount of **Loss** arising from each **Claim** that exceeds the applicable Retention stated in the Schedule of Sublimits affording coverage to such **Claim**.  Such Retention amounts shall be borne by the **Insured** and remain uninsured.

The following provisions shall apply;

(a)   *Registered Representative Retentions*

(i)  The Retention stated in Item 2(a) of the Schedule of Sublimits shall apply to each **Registered Representative** for **Loss** arising from a **Wrongful Act** or **Interrelated Wrongful Acts**.  This Retention shall apply severally to each **Registered Representative** when a **Claim** is made against one or more **Registered Representatives** and not against a **Broker-Dealer**.  This Retention shall apply when a **Claim**:

(1)  is made against a **Registered Representative** with respect to **Life Products**; and
(2)  is not made against any **Broker-Dealer**.

(ii) The Retention stated in Item 2(b) of the Schedule of Sublimits shall apply to each **Registered Representative** for **Loss** arising from a **Wrongful Act** or **Interrelated Wrongful Acts**.  This Retention shall apply severally to each **Registered Representative** when a **Claim** is made against one or more **Registered Representatives** and not against a **Broker-Dealer**.  This Retention shall apply when a **Claim**:

(1)  is made against a **Registered Representative** with respect to non-**Life Products**; and
(2)  is not made against any **Broker-Dealer**.

Notwithstanding the foregoing, in no event shall the total amount of all **Registered Representative** Retentions described in subparagraph (i) or (ii) above in connection with any **Claim** for a **Wrongful Act** or **Interrelated Wrongful Acts** exceed the amount of the **Broker-Dealer** Retention stated in Item 2(d) of the Schedule of Sublimits.  In the event that the aggregate of all such **Registered Representative** Retentions in connection with such **Claim** exceeds the amount stated in Item 2(d), then the Retention amount applicable to such **Claim** shall be in an amount equal to the amount stated in Item 2(d) and not the aggregate of all such **Registered Representative** Retention amounts stated in subparagraphs (i) or (ii) above. Such Retention amount shall be borne by the **Registered Representatives** and remain uninsured.

(b)   *Broker-Dealer Retention (Coverage A(3))*

The Retention stated in Item 2(c) of the Schedule of Sublimits shall apply to **Loss** arising from a **Wrongful Act** or **Interrelated Wrongful Acts**.  This Retention shall apply to all **Insureds** under this policy when a **Claim** is made pursuant to Coverage A(3) against the **Broker-Dealer**.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

For purposes of the Retention stated in Item 2(c), **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as arising out of one **Wrongful Act**, and only one Retention amount shall apply thereto.

(c)     *Broker-Dealer Retention (other than Coverage A(3))*

The Retention stated in Item 2(d) of the Schedule of Sublimits shall apply to **Loss** arising from a **Wrongful Act** or **Interrelated Wrongful Acts**.  This Retention shall apply to all **Insureds** under this policy when a **Claim** is made pursuant to Coverage A(1) or A(2) against:

(i)    a **Broker-Dealer**; or
(ii)   both a **Broker-Dealer** and one or more **Registered Representative**.

For purposes of the Retention stated in Item 2(d), **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as arising out of one **Wrongful Act**, and only one Retention amount shall apply thereto. Under all circumstances, the Retention stated in Item 2(d) shall be borne by the **Insureds** and remain uninsured.

8.    **SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION**
If a **Claim** against a natural person **Insured** includes a **Claim** against: (1) the lawful spouse or legally recognized domestic partner of such **Insured**; or (2) a property interest of such spouse or domestic partner, and such **Claim** arises from any **Wrongful Acts** of such **Insured**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner.  This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased natural person **Insured**, and the legal representatives of any natural person **Insured** in the event of incompetence, insolvency or bankruptcy, who was an **Insured** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

9.    **NOTICE AND REPORTING**

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.  Notice shall include and reference this policy number as indicated in the Declarations.  Notice shall also include particulars sufficient to identify the **Insured(s)**.

(a)   The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** as soon as practicable after any **Insured** first becomes aware of the **Claim**. In all events, notification must be provided no later than either:

(i)    the end of the **Policy Period** or **Discovery Period** (if applicable); or

(ii)   within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable).

(b)   If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 9(a) above, then a **Claim** which is subsequently made against the **Insured(s)** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** or **Interrelated Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(c) If during the **Policy Period** or during any **Discovery Period** (if applicable) the **Insured(s)** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances and the reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved, and including the nature of the occurrence and specifics of the potential **Wrongful Act**, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** or **Interrelated Wrongful Acts** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 10.  CLAIM EXPENSES, SETTLEMENTS, JUDGMENTS (INCLUDING ADVANCEMENT OF CLAIM EXPENSES)

The **Insurer** shall have the right and duty to defend, subject to and as part of the **Policy Aggregate** and any applicable **Sublimit of Liability**, any **Claim** made against an **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported in writing to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** for which coverage is afforded by this policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

The **Insurer** shall have the right to make any investigation it deems necessary with respect to any **Claim** or notice of circumstances under this policy.  The **Insurer** shall have the right to make, with the written consent of the **Insured**, any settlement of a **Claim** under this policy it deems expedient.

The **Insured(s)** must consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insured(s)** are first made aware of the **Settlement Opportunity**, or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days.  Furthermore, in the event the **Insured(s)** do not consent to the settlement within the time frame described above, the **Insurer's** liability for the **Claim** shall not exceed the amount for which the **Insurer** could have settled the **Claim** plus **Claim Expenses** incurred up to the date of the refusal to settle.

In the event the **Insured(s)** refuse to consent to a **Settlement Opportunity**, the **Insurer** shall have the right but not the duty to continue the defense of the **Claim** after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the **Claim** by tendering control of the defense to the **Insured**.
In all events, the **Insurer** shall not be obligated to settle any **Claim**, pay any **Loss** or undertake or continue defense of any **Claim** after the applicable **Sublimit of Liability** or the **Policy Aggregate** has been exhausted by settlement of a **Claim(s)** or payment of **Loss**.  In each such case, the **Insurer** shall have the right to withdraw from the further defense of the **Claim** by tendering control of the defense to the **Insured(s).**

The **Insured** shall not admit liability for or settle any **Claim** or incur any **Claim Expenses** without the **Insurer's** prior written consent.  However, if the **Entity Insured** is able to dispose of all **Claims** which are subject to one Retention amount for an amount not exceeding the Retention amount (inclusive of **Claim Expenses**), then the **Insurer's** consent shall not be required for such **Claims**.

The **Insured(s)** shall give the **Insurer** and defense counsel full cooperation and such information as the **Insurer** and/or defense counsel reasonably request, including upon the **Insurer's** request, assisting in making settlements in the conduct of **Claims**, attending hearings, trials, arbitrations, mediations, and assisting in securing and giving evidence and obtaining the attendance of witnesses.

The **Insurer** shall not be obligated to defend any **Claims** or reimburse any **Insured** after the applicable **Sublimit of Liability** or **Policy Aggregate** has been exhausted, whichever occurs first.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

11. **CANCELLATION**

This policy may only be cancelled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Insureds' Representative**.  In the event of non-payment of premium by the **Insureds' Representative**, the **Insurer** may cancel this policy by delivering to the **Insureds' Representative** or by mailing to the **Insureds' Representative** by registered, certified or other first class mail, at the address shown in Item 2 of the Declarations, written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective.

The **Insureds** grant exclusive authority to cancel this policy to the **Insureds' Representative**.  This policy may be canceled by the **Insureds' Representative** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer's** authorized agent or to the **Insurer**.

The mailing of such notice as aforesaid shall be sufficient proof of notice.  The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender.  The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.  If the **Insureds' Representative** shall cancel this policy, the **Insurer** shall retain the pro rata proportion of premium hereon.  Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.  If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

12. **DISCOVERY**

(a)  *Optional Discovery Periods*:  The **Optional Discovery Periods** described in this Clause are not cancelable and any additional premium charged is non-refundable in whole or in part.  This Clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause shall terminate unless written notice by the **Named Entity** on behalf of all **Insureds** of election of a **Discovery Period**, together with the additional premium due from the **Insureds' Representative**, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

Bilateral Option: Except as indicated below, if the **Insurer** or the **Insureds' Representative** shall cancel or refuse to renew this policy, the  **Named Entity** on behalf of all **Insureds** shall have the right to a period following the effective date of such cancellation or nonrenewal (an "**Optional Discovery Period**") of one (1) year, upon payment of an additional premium amount to be determined in the sole discretion of the **Insurer**, in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Optional Discovery Period** for any **Wrongful Acts** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

Transaction Option: In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a period following the effective date of such **Transaction** (an "**Optional Discovery Period**") to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Optional Discovery Period** for any **Wrongful Acts** occurring prior to the effective time of the **Transaction** and otherwise covered by this policy.  The **Insurer** shall offer such **Optional Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide.  In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

(b)  *Terminated Registered Representative Discovery Period*: Upon termination of his or her status as a **Registered Representative** during the **Policy Period** (other than by retirement, death or disability), the terminated **Registered Representative** shall have until the end of the **Policy Period** ("**Terminated Registered Representative Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against such terminated **Registered Representative** during the **Terminated Registered**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Representative Discovery Period**, but only for **Wrongful Acts** which occurred prior to his or her termination date and otherwise covered by this policy.

(c)   *Retired/Deceased/Disabled Registered Representative Discovery Period*:

Upon retirement, death or disability of a **Registered Representative** during the **Policy Period**, the retired, deceased (or the estate of the deceased **Registered Representative** on his or her behalf; or the **Insureds' Representative** on the deceased **Registered Representative's** behalf) or disabled **Registered Representative** shall have an unlimited period following the date of his or her retirement, death or disability ("**Retired/Deceased/Disabled Registered Representative Discovery Period**"), in which to give written notice to the **Insurer** of **Claims** first made against such **Registered Representative** during the **Retired/Deceased/Disabled Registered Representative Discovery Period**, but only for **Wrongful Acts** which occurred prior to the date of his or her retirement, death or disability and otherwise covered by this policy.

Such unlimited **Retired/Disabled/Deceased Registered Representative Discovery Period** described above, however, shall expire one (1) year from the date of any cancellation or non-renewal of this policy; provided that if an **Optional Discovery Period** is elected by the **Named Entity** that exceeds the one (1) year **Retired/Deceased/Disabled Registered Representative Discovery Period** described in this paragraph, then the longer of the two **Discovery Periods** shall apply and, in all cases, only for **Wrongful Acts** which occurred prior to the date of such **Registered Representative's** retirement, death or disability and otherwise covered by this policy.

The terms "retirement" and/or "retired" as used in this Clause 12. (b) & (c), means voluntarily ceasing permanently (1) all activities performed in the capacity as a **Registered Representative**, including the termination of all registrations with the U.S. Securities and Exchange Commission, any state regulatory body and **FINRA**; and (2) all contracts with or employment from all **Entity Insureds**. "Retirement" and/or "retired" shall include **Registered Representative(s)** who would otherwise qualify under sections (1) and (2) of this paragraph, but who have a commission, servicing or similar agreement in place with an **Entity Insured**, for the sole purpose of receiving trailing commission.

## 13.  TRANSACTIONS AND CHANGES TO ENTITY INSUREDS

(a)   *Transactions*: In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable.  The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* in subparagraph (a) of Clause 12. Discovery.

(b)   *Changes to Entity Insureds*:  If, during the **Policy Period**, any **Broker-Dealer** that is not the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert, or if any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty percent (50%) of the voting power for the election of directors of such **Broker-Dealer**, or acquires the voting rights of such an amount of such securities (either of the above events herein referred to as the "Runoff Trigger") then, this policy shall continue in full force and effect as such **Broker-Dealer**, and any **Subsidiary** or director, officer, partner, employee or **Registered Representative** thereof, as to **Wrongful Acts** occurring prior to the effective time of the **Runoff Trigger**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** occurring after the effective time of the **Runoff Trigger**. The **Insureds' Representative**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

shall give the **Insurer** written notice of the **Runoff Trigger** as soon as practicable, but not later than thirty (30) days after the effective date of the **Runoff Trigger**.

## 14.  SUBROGATION

To the extent of any payment under this policy, the **Insurer** shall be subrogated to all of the **Insureds'** rights of recovery thereof. Each **Entity Insured** and each **Registered Representative** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to exercise subrogation rights or other rights, directly or in the name of the **Entity Insured** or any **Registered Representative**.  In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless (a) Exclusions 3(a), 3(b) or 3(c) of this policy apply with regard to such **Insured**, or (b) such **Claim** arises out of an act, error or omission other than a covered **Professional Service**.

## 15.  OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Policy Aggregate** or any applicable **Sublimit of Liability** provided by this policy.  This policy applies to the amount of **Loss** which is more than the limits of insurance of the other insurance and the total of all Retentions and self-insured amounts under such other insurance. This policy shall not pay more than the applicable **Sublimit of Liability** or the **Policy Aggregate**.

If any **Claim** under this policy is also covered by one or more other policies issued by the **Insurer**, or any of its affiliates, to the persons or entities insured under this policy or to any person who controls, is controlled by, or is affiliated by common control with, said persons or entities, then with respect to any such **Claims**:

(a)     the **Insurer** shall not be liable under this policy for a greater proportion of the loss than the applicable **Sublimit of Liability** or **Policy Aggregate** under this policy bears to the total limits of  liability of all such policies, and

(b)     the maximum amount payable under all such policies shall not exceed the limit of liability of that policy referred to above which has the highest applicable limit of liability.

Nothing contained in this Clause shall be construed to increase the **Policy Aggregate** of this policy or the limits of liability of any policy issued by an affiliate of the **Insurer**.

## 16.  NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of all **Insureds** with respect to the giving of notice of **Claim** and the exercising or declining to exercise any right to an **Optional Discovery Period**. The **Named Entity**, each **Registered Representative** and each **Entity Insured** hereby covenants that the **Insureds' Representative** shall be the sole agent of the **Named Entity**, each **Registered Representative** and each **Entity Insured** for the giving and receiving notice of non-renewal, conditional renewal, cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the **Insurer** from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by written endorsement issued to form a part of this policy and signed by an authorized representative of the **Insurer**.

## 17.  ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

## 18.  ALTERNATIVE DISPUTE RESOLUTION

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(a)  *ADR Options*:  All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this Clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR.  In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

(b)  *Mediation*:  In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least ninety (90) days shall have elapsed from the date of the termination of the mediation.

(c)  *Arbitration*:  In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or costs.

(d)  *ADR Process*:  The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

ADR Rules:  In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the state of the **Named Entity** indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**.  Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**.  The **Named Entity** shall act on behalf of each and every **Insured** under this Clause. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

## 19.  POLICY CHANGES

Notice to or knowledge possessed by any person shall not affect a waiver or change in any part of this policy.  No provision of this policy may be amended, waived or otherwise voided, except by endorsement hereto issued to form a part hereof, signed by an authorized representative of the **Insurer**.

## 20.  ACTION AGAINST INSURER

Except as provided in the Alternative Dispute Resolution Clause of this policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of such **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against an **Insured** or the **Named Entity** to determine an **Insured's** liability, nor shall the **Insurer** be impleaded by an **Insured** or the **Named Entity** or their legal representatives.

## 21.  BANKRUPTCY AND INSOLVENCY

The **Financial Insolvency** of any **Entity Insured** or any **Registered Representative** shall not relieve the **Insurer** of any of its obligations under this policy.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

In such event, the **Insurer** and each **Entity Insured** and **Registered Representative** agree to cooperate in any efforts by the **Insurer** or any **Entity Insured** or **Registered Representative** to obtain relief for the benefit of the **Registered Representative** from any stay or injunction applicable to the distribution of the policy proceeds.

## 22.  TERRITORY

This policy applies to **Wrongful Acts** committed anywhere in the world, provided that any **Claim** must be brought against an **Insured** in the United States of America.

Notwithstanding anything in the policy to the contrary, coverage under this policy shall be provided solely with respect to any **Insured(s)** that maintains a primary place of business, or has a **Certificate** bearing an address in the United States of America. Coverage under this policy shall not apply to any **Insured** that maintains a primary place of business in, or has a **Certificate** bearing an address in a **Foreign Jurisdiction**.

## 23.  CONFORMANCE TO LAW

Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.  Coverage under this policy shall not be provided to the extent prohibited by any law.

## 24.  HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 25.  OFAC

Payment of **Loss** under this Policy will only be made in full compliance with all united States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

[The balance of this page is intentionally left blank.]

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.          Endorsement No.:   1

Policy No.:    FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## LISTED BROKER-DEALER ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Definition of "**Broker-Dealer**" shall include the following listed entity(ies), subject to such entity's respective **Retroactive Date**:

| LISTED BROKER-DEALER(S) | RETROACTIVE DATE |
|---|---|
| Royal Alliance Associates, Inc. | 01/18/1990 |
| FSC Securities Corporation | 05/04/1977 |
| SagePoint Financial, Inc. | 09/13/2004 |
| Advantage Capital Corporation | 01/03/1996 |
| SunAmerica Securities, Inc | 06/19/1989 |
| AIG Financial Advisors, Inc | 09/13/2004 |
| American General Securities Inc | 03/08/1983 |
| Woodbury Financial Services, Inc. | 03/15/1968 |

However, solely with respect to Woodbury Financial Services, Inc., Clause 3. EXCLUSIONS paragraph (ee) is deleted in its entirety and replaced with the following,

(ee)    with respect to coverage provided under Coverage A only, alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to 12/01/2013, if on or before 05/06/2016 any director, officer, risk manager or general counsel or equivalent position, of Woodbury Financial Services, Inc. knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**, or alleging, arising out of, based upon or attributable to any subsequent **Interrelated Wrongful Act**;

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:  2

Policy No.:    FL5EO00106-191                    Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## LIFE SETTLEMENTS ENDORSEMENT

In consideration of the additional premium, it is hereby understood and agreed that the policy is amended as follows:

1.    In Clause 3. EXCLUSIONS, paragraph (q) is amended by deleting subparagraph (7) in its entirety.

2.    The Definition of "**Professional Services**" is amended to include the following:

"**Professional Services**" also means the arrangement of **Life Settlements** by a **Registered Representative**; provided that such arrangements are rendered in connection with an **Approved Activity**.

3.    For purposes of the coverage afforded under this endorsement, the term "**Life Settlements**" means the sale of a term, variable, universal or whole life insurance policy by the policyholder or owner for valid consideration, prior to his or her death, to a third party for payment of all or a portion of the policy's death benefit, subject to the third party's assumption of all rights and obligations, including but not limited to premiums, under said policy.  Such sale or conveyance must be memorialized by a written contract and agreement between the seller and buyer of the policy executed after a **Registered Representative** provides written disclosures to them.

4.    Coverage as afforded under this endorsement shall be subject to the **Registered Representative**: (i) having possession of all necessary licenses and qualifications to arrange **Life Settlements**; (ii) being in compliance with all laws, rules, regulations and requirements of state, local, federal or self-regulatory authorities of any nature pertaining to **Life Settlements**; and (iii) providing full written disclosures to, and receipt of a written acknowledgement of receipt of such disclosures from, the customer or client for whom the **Life Settlement** is being arranged.

5.    It is further understood and agreed that, solely with respect to the coverage under this endorsement, the **Insurer** shall not be liable for **Loss** in connection with any **Claim**:

LS-1.    alleging, arising out of, based upon or attributable to the **Insured's** actual or alleged guarantees, promises or warranties as to interest rates, market values, earnings, future values or future premiums or payments in connection with variable life insurance, universal life insurance, whole life insurance, variable annuities, flexible annuities, scheduled premium annuities, mutual funds or **Life Settlements**;

LS-2.    alleging, arising out of, based upon or attributable to any actual or alleged **Life Settlements** comprising a term, variable, universal or whole life insurance policy that was sold or serviced by **Registered Representative** within the 5 years prior to the arrangement of, or attempt to arrange, any **Life Settlement** transaction; and

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

LS-3.    alleging, arising out of, based upon or attributable to the arrangement of or attempt to arrange, any **Life Settlement** comprising a term, variable, universal or whole life insurance policy that was originally sold or serviced by the **Registered Representative** and initially funded through any form of premium financing.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   3

Policy No.:    FL5EO00106-191                Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# TERRORISM EXCLUSION

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of or in connection with "terrorism" including but not limited to, any contemporaneous or ensuing loss caused by fire, looting or theft.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

A government;
The civilian population of a country, state or community; or To disrupt the economy of a country, state or community.

"Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   4

Policy No.:   FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# TRADE ERROR CORRECTION EXTENSION (WITH SEPARATE RETENTION AND SUBLIMIT)

In consideration of the premium charged, it is hereby understood and agreed that, subject to the terms, conditions and exclusions below, the **Insurer** shall pay on behalf of the **Insured**, **Loss** incurred by the **Insured** with the **Insurer's** consent to correct any actual **Wrongful Act** of an **Insured** arising out of, based upon, or attributable to a "**Trade Error**." However, the **Broker/Dealer** may correct any actual **Wrongful Act** of an **Insured** arising out of, based upon, or attributable to a "**Trade Error,**" without the **Insurers** consent, for those matters not exceeding $25,000.  In granting the **Broker/Dealer** permission to settle such **Claims,** the **Insurer** does not waive any policy defenses.

For the purposes of this endorsement only, a "**Trade Error**" is defined as any actual **Wrongful Act** in connection with the clearance, settlement or execution of trades.

It is further understood and agreed that the **Insurer** shall pay such **Loss** provided that: (i) the **Trade Error** is reported to the **Insurer**, within five (5) business days of the discovery of the **Trade Error** by the **Insured**; and (ii) if not corrected, such **Trade Error** would have resulted in a **Claim** by any customer or client of the **Insured** for **Loss** for which the **Insured** would be liable and which, in the absence of any correction, would have constituted a valid covered **Claim** for which the **Insurer** would be liable under this policy.

Coverage under this endorsement is subject to all of the following additional conditions:

1.     Should the **Broker-Dealer** fail to provide the **Insurer** with proper notice of the **Trade Error**, and independently corrects the **Trade Error**, the **Insurer** reserves the right to deny a subsequent **Claim** for the failure to follow prescribed policy provisions.

2.     For the purposes of the coverage provided by this endorsement only, the applicable Retention shall be equal to: (i) $10,000 if the **Trade Error** is caused by a **Registered Representative**; and (ii) $100,000, if the **Trade Error** is cause by an **Entity Insured**.  Such Retention amount shall apply to each **Wrongful Act** or **Interrelated Wrongful Act**.

3.     The **Trade Error** occurs during the **Policy Period**.

4.     The **Trade Error** arises solely out of the **Insured's** failure to follow directions from a customer or client in connection with the **Non-discretionary Investment** (as defined herein) of the customer's or client's assets.

5.     The **Trade Error** arises in the ordinary course of the **Insured's** operations and, if not corrected, would automatically result in damage to a customer or client of the **Insured** or if the customer or client is a mutual fund, result in a **Claim** by the shareholders of the mutual fund.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**2-14179**

6.      Solely with regard to the coverage provided by this endorsement, the following **Sublimits of Liability** shall apply:

| | | | |
|---|---|---|---|
| **TE(a)** | $ | 2,000,000 | each **Trade Error** |
| **TE(b)** | $ | 30,000,000 | aggregate for all **Loss** |

It is further understood and agreed that the **Sublimit of Liability** stated in subparagraph TE(a) above shall be part of, and not in addition to, the **Sublimit of Liability** stated in subparagraph TE(b) above and the **Policy Aggregate**, and:

(i)     if such **Trade Error** is caused by the **Broker-Dealer**:

    a.     the **Sublimit of Liability** stated in subparagraph TE(a) above shall be part of the **Sublimit of Liability** stated in the Item 1(a)(i)(1) of the applicable Coverage Section Schedule; and

    b.     the **Sublimit of Liability** stated in subparagraph TE(b) above shall be part of, and not in addition to, the **Sublimit of Liability** stated in Item 1(a)(ii)(2) of the applicable Coverage Section Schedule, as well as the **Policy Aggregate**; or

(ii)    if such **Trade Error** is caused by a **Registered Representative**:

    a.     the **Sublimit of Liability** stated in subparagraph TE(a) above shall be part of the **Sublimit of Liability** stated in the Item 1(b)(i) of the applicable Coverage Section Schedule under the option selected by such **Registered Representative**; and

    b.     the **Sublimit of Liability** stated in subparagraph TE(b) above shall be part of, and not in addition to, the **Sublimit of Liability** stated in Item 1(b)(ii) of the applicable Coverage Section Schedule under the option selected by such **Registered Representative**, as well as the **Policy Aggregate**.

7.      The **Insured** shall provide a sworn proof of loss setting forth all the circumstances of the loss and explaining why the **Insured** believes it is entitled to coverage under this endorsement.  At the request of the **Insurer**, the **Insured** shall make its officers and employees available for interview by the **Insurer** in connection with the submission of the claim under this endorsement and/or the proof of loss.

8.      Nothing contained in this endorsement shall obligate the **Insurer** to reimburse the **Insured**:

    (a)     for **Loss** arising out of any known **Wrongful Act**; or

    (b)     for **Loss** arising out of any **Wrongful Act** for which the **Insured** would not be liable pursuant to any contractual provision defining the scope of the **Insured's** liability or providing protection from liability including, without limitation, any applicable exculpatory provision; or

    (c)     for **Loss** arising out of any wire or electronic transfer of funds; or

    (d)     for **Loss** arising out of any contractual obligation to a customer or client of the **Insured**, guaranteeing any rate of return or the fulfillment of any minimum performance standards; or

    (e)     for **Loss** arising out of the diminution in value of the money, securities, property or any other item of value, unless caused by a **Wrongful Act** of any person or entity **Insured**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

under this policy in the execution or implementation of investment advice or any investment decision; or

(f)      for **Loss** arising out of the loss of money, securities or other property in the custody or control of the **Broker-Dealer**; or

(g)      that portion of **Loss** which is not otherwise covered under the policy.

9.      In the event of coverage under this endorsement, the giving of the notice by the **Insured** shall be deemed to be notice of a **Claim** made against an **Insured** at the time the notice is given to the **Insurer**.

10.    It is further understood and agreed that should the **Insurer** conclude that it lacks sufficient information to determine whether a covered **Claim** would result from facts reported hereunder, then the **Insured** shall only have recourse against the **Insurer** until and unless an actual **Claim** is filed against an **Insured** in the form of arbitration.

11.    The term "**Non-discretionary Investment**" shall mean an investment or transaction made at the specific direction or approval of the customer or client and in no event shall include any decision made pursuant to discretionary authority granted to an **Insured** even if such authority is subject to investment guidelines or general investment parameters or instructions.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   5

Policy No.:   FL5EO00106-191                                 Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# VICARIOUS LIABILITY ENDORSEMENT REFERRING CERTIFIED PUBLIC ACCOUNTANT

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to **Claim Expenses,**  the Definition of "**Insured**" is amended to include any natural person **Referring Certified Public Accountant** as an **"Additional Insured."**

1.  Notwithstanding the foregoing, coverage as provided by this endorsement shall only apply with respect to a **Claim** made against an **Additional Insured** for the **Wrongful Act(s)** of a **Registered Representative** or an **Entity Insured** and provided further that (a) such **Claim** does not include any allegation of a **Wrongful Act** of the **Additional Insured**; and (b) an **Insured** (other than the **Additional Insured**) is and remains a defendant in the action along with such **Additional Insured**. In no event shall coverage be provided for any independent **Wrongful Act** of the **Additional Insured**.

2.  The aggregate **Sublimit of Liability** available to any natural person **Referring Certified Public Accountant**, shall be $50,000.

3.  **Referring Certified Public Accountant** herein means; (a) any natural person who has been designated as such by the American Institute of Certified Public Accountants, and (b) who is appropriately licensed at the time of the alleged **Wrongful Act,** and (c) who refers customers or clients to the **Broker/Dealer** or **Registered Representative**, and (d) has a written contract or agreement with the Broker/Dealer or Registered Representative which requires indemnification as respects to **Professional Services** provided by the **Broker/Dealer** or **Registered Representative**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   6

Policy No.:   FL5EO00106-191                        Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# IMPROPER MUTUAL FUND AND VARIABLE ANNUITY PRACTICES ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any allegation(s) that any **Insured** intentionally or negligently permitted, or aided or abetted others in using, was aware of others using, or was a participant or connected in any way in the use of:  (1) **Late Trading**; (2) **Market Timing**; (3) **Soft-dollar Activity**; (4) **Front Running**; or (5) **Revenue Sharing** related to a mutual fund or variable annuity.

Solely for the purpose of this endorsement, the following terms shall have the following meanings:

(a)  **"Front Running"** means the trading by brokers of mutual fund shares or variable annuities based on information received internally, before clients of the broker have been given the information.

(b)  **"Late Trading"** means:  (1) any transaction involving mutual fund shares made after the determination of the mutual fund's Current Net Asset Value (as defined in Rule 2a-4 of the Investment Company Act of 1940), including but not limited to, the placement or confirmation of orders for, or the purchase or redemption of mutual fund shares, but made at a price based on the fund's previously determined Current Net Asset Value calculated that same day, in contravention of Rule 22c-1 of the Investment Company Act of 1940; or, (2) any transaction defined as late trading by any state or federal statute or regulation, or any prospectus, policy, limitation, agreement or procedure of the mutual fund.

(c)  **"Market Timing"** means the making of short-term purchases or sales of mutual fund shares or variable annuities, contrary to or in violation of any mutual fund prospectus, variable annuity contract, policy, limitation, agreement or procedure, or contrary to or in violation of any state or federal statute or regulation, and the conduct associated therewith, including, but not be limited to:

    (1)  the waiver of redemption fees associated with **Short-Term Trading** contrary to the mutual fund's prospectus, variable annuity contract, policies, limitations, agreements or procedures;

    (2)  the failure to abide by written representations regarding the permissibility of **Short-Term Trading**, or written representations regarding the mutual fund's or variable annuity's efforts to monitor or prevent **Short-Term Trading**;

    (3)  the receipt of fees or other compensation from certain investors in exchange for providing such investors with **Short-Term Trading** privileges not available to other investors; and

    (4)  the failure to monitor, detect, identify or remediate **Short-Term Trading**.

(d)  **"Revenue Sharing"** means any undisclosed compensation to the **Insured(s)** by a sponsoring company for the purchase or sale of their mutual fund or variable annuity

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(e) **"Short-Term Trading"** means the redemption of shares of a mutual fund, or sale of a variable annuity contract, in a time period less than that provided in a mutual fund prospectus, or a variable annuity contract, or the policies, limitations, agreements or procedures of a mutual fund or variable annuity, or at law, including without limitation any so-called "in and out" trading of mutual fund shares or variable annuity contracts or any other trade of mutual fund shares or variable annuity contracts designed to take advantage of inefficiencies in the method the mutual fund uses to price its shares or the variable annuity uses to price its contracts.

(f) **"Soft Dollar Activities"** means paying or providing, or receiving or accepting, fees, commissions, bonuses, gratuities, services or any other form of compensation in exchange for the preferential treatment of a particular mutual fund, particular class of mutual fund share or particular variable annuity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   7

Policy No.:   FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## VICARIOUS LIABILITY EXTENSION FOR INVESTMENT ADVISOR SOLICITORS

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  The Definition of "**Insured**," is amended to include an **Investment Advisor Solicitor**:

    (a)  but solely with respect to a **Claim** made against such **Investment Advisor Solicitor** for the **Wrongful Act(s)** of a **Registered Representative**, and

    (b)  provided that such **Claim** does not include any allegation of a **Wrongful Act** or other wrongdoing of the **Investment Advisor Solicitor**.

    No coverage shall be available for any **Claim** alleging any independent **Wrongful Act** of the **Investment Advisor Solicitor**.

2.  For purposes of this endorsement, the following terms shall have the following meanings:

    IAS-1.  "**Investment Advisor Solicitor**" means any individual who has entered into a written agreement with a **Broker-Dealer** that is a corporate registered investment advisor to provide **Solicitation Services** on behalf of such **Broker-Dealer**.

    IAS-2.  "**Solicitation Services**" means only activities and services in compliance with Rule 206(4)-3 of the Investment Advisers Act of 1940, and any amendments thereto, in connection with referring clients to a **Broker-Dealer** that is a corporate registered investment advisory, or to a **Registered Representative** acting as an investment advisor representative of such **Broker-Dealer**. "**Solicitation Services**" shall not include (1) any advice or statements expressing an opinion on the merits of a particular investment; (2) any advice or statement claiming to meet the investment objectives or needs of a client; or (3) any "selling" of any service provided by the corporate registered investment advisor **Broker-Dealer** or a **Registered Representative** acting as an investment advisor representative to such **Broker-Dealer**.

3.  In addition to Clause 3. Exclusions, it is understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim**:

    IAS-1.  alleging, arising out of, based upon or attributable to the **Investment Advisor Solicitor's** activities as an accountant, CPA, lawyer or property and/or casualty agent or broker; or

    IAS-2.  alleging, arising out of, based upon or attributable to the **Investment Advisor Solicitor's** providing of tax advice.

4.  It is further understood and agreed that the coverage provided pursuant to this endorsement shall be subject to the **Sublimits of Liability** set forth in the applicable Coverage Section Schedule as follows:

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(a) in the event of a **Claim** made solely against an **Investment Advisor Solicitor** or against a **Investment Advisor Solicitor** and a **Registered Representative**, the **Sublimit of Liability** option set forth in Item 1(b) of the applicable Coverage Section Schedule as selected by such **Registered Representative** whose **Wrongful Acts** gave rise to the **Claim**;

(b) in the event that a **Claim** is made against a **Investment Advisor Solicitor** and an **Entity Insured**, the **Sublimit of Liability** option set forth in Item 1(a) of the applicable Coverage Section Schedule; or

(c) in the event that a **Claim** is made against multiple **Registered Representatives** and one or more **Entity Insured** and/or one or more **Investment Advisor Solicitor**, the **Sublimit of Liability** set forth in Item 1(c) of the applicable Coverage Section Schedule.

In no event shall the coverage provided pursuant to this endorsement for an **Investment Advisor Solicitor** increase in any way or be in addition to the applicable **Sublimits of Liability** or the **Policy Aggregate**.

5. The highest Retention amount applicable to any one **Insured** involved in the **Claim** shall apply. When the **Investment Advisor Solicitor** is named alone in the **Claim**, the highest applicable Retention shall be the Retention amount applicable to the **Registered Representative** whose **Wrongful Acts** gave rise to the **Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.          Endorsement No.:   8

Policy No.:     FL5EO00106-191                    Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# VICARIOUS LIABILITY EXTENSION FOR FINANCIAL INSTITUTIONS

In consideration of the premium charged, it is hereby understood and agreed that the Definition of "**Insured**," is amended to include a **Financial Institution**:

(1)     but solely with respect to a **Claim** made against such **Financial Institution** for the **Wrongful Act(s)** of a **Registered Representative**, and

(2)     then only to the extent that an **Entity Insured** is obligated to indemnify the **Financial Institution** for such **Wrongful Acts** pursuant to a written contract or agreement with such **Financial Institution** as respects the provision of **Professional Services** by a **Registered Representative**, and

(3)     provided further that such **Claim** does not include any allegation of a **Wrongful Act** or other wrongdoing of the **Financial Institution**.

No coverage shall be available for any **Claim** alleging any independent **Wrongful Act** of the **Financial Institution**.

For purposes of this endorsement, "**Financial Institution**" means a bank, credit union or savings and loan that has or had a written contract or agreement with the **Entity Insured** to provide **Professional Services** to clients of that **Financial Institution**.

It is further understood and agreed that the coverage provided pursuant to this endorsement shall be subject to the **Sublimits of Liability** set forth in the applicable Schedule of Sublimits as follows:

(a)     in the event of a **Claim** made solely against a **Financial Institution** or against a **Financial Institution** and a **Registered Representative**, the **Sublimit of Liability** option set forth in Item 1(b) of the applicable Coverage Section Schedule as selected by such **Registered Representative** whose **Wrongful Acts** gave rise to the **Claim**;

(b)     in the event that a **Claim** is made against a **Financial Institution** and an **Entity Insured**, the **Sublimit of Liability** option set forth in Item 1(a) of the applicable Coverage Section Schedule; or

(c)     in the event that a **Claim** is made against multiple **Registered Representatives** and one or more **Entity Insured** and/or one or more **Financial Institutions**, the **Sublimit of Liability** set forth in Item 1(c) of the applicable Coverage Section Schedule.

In no event shall the coverage provided pursuant to this endorsement for a **Financial Institution** increase in any way or be in addition to the applicable **Sublimits of Liability** or the **Policy Aggregate**.

The highest Retention amount applicable to any one **Insured** involved in the **Claim** shall apply.  When the **Financial Institution** is named alone in the **Claim**, the highest applicable Retention shall be the Retention amount applicable to the **Registered Representative** whose **Wrongful Acts** gave rise to the **Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   9

Policy No.:    FL5EO00106-191                          Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## SPECIFIC INDIVIDUAL AND/OR ENTITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that no coverage shall apply for **Loss** of any **Insured** in connection with;

1.  **Professional Services** provided by an **Insured** as a co-representative, co-agent or similar designation with Scott M. Sakata, including any affiliated person or entity to Scott M. Sakata, regardless of whether such **Professional Service** was an **Approved Activity**, or

2.  the purchase or sale of **Life Products** by Troy L. Sattler CRD# 4397687, including any premium financing in connection therewith.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   10

Policy No.:   FL5EO00106-191                           Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# BRAMCO / LIFEMARK ENDORSEMENT

In consideration of the premium charged, and solely with respect to **Registered Representatives** who are also **Wholesale Broker(s)**, the policy is amended as follows;

1.  Clause 2. Definitions paragraph (y) "**Professional Services**" is deleted in its entirety and replaced with the following;

    (y) "**Professional Services**" means if rendered in connection with an **Approved Activity**, the purchase or sale of securities, including investment companies, variable annuities or variable life insurance for or on the behalf of a customer or client of the **Broker-Dealer** pursuant to a written agreement between the **Broker-Dealer** and the customer or client.

2.  Clause 2. Definitions is amended by adding the following to the end there of;

    "**Wholesale Broker(s)**" means a **Registered Representative** who is a past, present or future employee or independent contractor of BRAMCO Financial Resources or Lifemark Partners, Inc., who on behalf of such entities, is or was engaging in **Wholesale Brokerage Services**.

    "**Wholesale Brokerage Services**" means acting as an intermediary between a retail broker and an insurer.

    ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   11

Policy No.:     FL5EO00106-191                            Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## OUTSIDE REGISTERED INVESTMENT ADVISOR ENDORSEMENT

In consideration of the premium charged it is hereby understood and agreed that in Clause 2. **DEFINITIONS**, paragraph (s), "**Investment Advisory Services**," is deleted in its entirety and replaced with the following;

(i)   "**Investment Advisory Services**" means

    (1) the following services rendered by an investment advisor representative, pursuant to a written agreement between the **Broker-Dealer** and the customer or client: providing financial, economic or investment advice or investment management services, but only if the investment advisor representative received approval from the **Broker-Dealer** prior to rendering such services.  Further, with respect to the foregoing services, when in connection with the purchase or sale of an investment and/or insurance product, such product must qualify as an **Approved Product**, and

    (2)  the following services rendered by an investment advisor representative, pursuant to a written agreement between an **Outside Registered Investment Advisor** and the customer or client: providing financial, economic or investment advice or investment management services, but only if the investment advisor representative received approval from the **Broker-Dealer** prior to rendering such services.  Further, with respect to the foregoing services, when in connection with the purchase or sale of an investment and/or insurance product, such product must qualify as an **Approved Product**.

For purposes of this endorsement, "**Outside Registered Investment Advisor**" means a registered investment advisor firm, other than the **Broker-Dealer**.

    ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   12

Policy No.:   FL5EO00106-191                           Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# PRIOR BROKER-DEALER COVERAGE FOR REGISTERED REPRESENTATIVES

In consideration of the premium charged, and solely with respect to the **Listed Registered Representatives** below, it is hereby understood and agreed that the policy is amended as follows:

1.   The term "**Broker-Dealer**" is amended to include any **Prior Broker-Dealer**, but solely with respect to the coverage afforded to a **Registered Representative** under Coverage B.  Nothing in this endorsement shall be construed to provide any coverage to any **Prior Broker-Dealer** or for any **Wrongful Act** of such **Prior Broker-Dealer**.

2.   The term "**Prior Broker-Dealer**" means any entity that is not a **Broker-Dealer** under subparagraph (1), (2), (3) or (4) of the definition of that term, and with which a **Registered Representative** had engaged, for compensation, in the business of rendering **Professional Services** on behalf of such entity prior to such **Registered Representative's First Enrollment Date**.  A **Prior Broker-Dealer** shall not under any circumstances be deemed an **Entity Insured** under this policy.

3.   This policy shall not apply to any **Claim** made against a **Registered Representative** alleging, arising out of, based upon or attributable to, directly or indirectly, any product, service or activity that was not an **Approved Product** by a **Broker-Dealer** (other than a **Prior Broker-Dealer**) at the time such **Registered Representative** is alleged to have first committed a **Wrongful Act** resulting in such **Claim**.

4.   Coverage as is afforded under this endorsement for any **Loss** from any **Claim** made against a **Registered Representative** for a **Wrongful Act(s)** committed by such **Registered Representative** in the rendering of or failure to render **Professional Services** on behalf of a **Prior Broker-Dealer**, shall be specifically excess of any:

(a)   indemnification provided by such **Prior Broker-Dealer**, to the extent that such **Prior Broker-Dealer** is permitted or required to indemnify such **Registered Representative**, pursuant to law, common or statutory, or contract, or its charter or by-laws; and

(b)   insurance coverage afforded to any such **Registered Representative** applicable to such **Claim**.

Further, in the event such other **Registered Representative** insurance described in subparagraph (b) above is provided by the **Insurer** or its affiliates (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or any applicable sublimit of liability, or failure to submit a notice of a **Claim** as required) then the **Insurer's** maximum liability for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit or sublimit of liability (as set forth on the Declarations) of the other insurance provided to such **Registered Representative** by the **Insurer's** affiliate.

5.   The definition of "**Retroactive Date**" is deleted in its entirety and replaced with the following;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(1) with respect to each **Broker-Dealer**, the date set forth as such in any endorsement to this policy; and

(2) with respect to a **Listed Registered Representative**, the inception date of the first professional errors and omissions policy issued to or for the benefit of a **Registered Representative** in his or her capacity as a registered representative under contract or otherwise employed by any **Prior Broker-Dealer**, which policy has been maintained and in force without interruption up to the inception of this policy.

6. Notwithstanding anything to the contrary, this policy does not apply to any **Claim** for **Loss** under Coverage B against the **Registered Representative** for the rendering or failure to render P**rofessional Services** on behalf of a **Prior Broker-Dealer**, unless such **Claim** would have otherwise been covered under all other terms and conditions of this policy.

7. The **Broker Dealer** must provide notice to the **Insurer** of its request to add a **Listed Registered Representative** for prior acts coverage as provided by this endorsement within thirty (30) days of the first date of contract between the **Listed Registered Representative** and the **Broker-Dealer.**

8. Under no condition does this policy apply to **Loss** alleging, arising out of, based upon or attributable to **Wrongful Acts** committed by a **Registered Representative** prior to the first date of contract with the **Broker-Dealer**, unless such **Registered Representative** is either listed by name below or listed by name on a **Listed Registered Representative Prior Acts Addendum Endorsement** attached to this policy.

9. **Listed Registered Representative:**                    CRD#:
   a. William Kumm                                          1709243
   b.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.          Endorsement No.:   13

Policy No.:     FL5EO00106-191                      Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# EXCLUSION (q) AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 3. Exclusions paragraph (q), is amended as follows;

1.   Paragraph (2) is amended as follows;

   (2)   commodities, futures contracts, forwards contracts or any type of option or futures contract except;

      (i)     buying of puts or calls; or
      (ii)    selling of covered call options; or
      (iii)   buying of gold futures contracts covered by cash.

2.   Paragraph (5) is deleted in its entirety.

3.   Paragraph (8) is deleted in its entirety.

           ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**2-14179**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   14

Policy No.:   FL5EO00106-191                            Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## FIRST ENROLLMENT DATE DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. Definitions paragraph (n) **First Enrollment Date**, is hereby deleted in its entirety and replaced with the following;

(n)   "**First Enrollment Date**" means any date on or after 05/06/2016 that a **Registered Representative** first enrolled for coverage under this policy issued by the **Insurer**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   15

Policy No.:    FL5EO00106-191                          Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## AMEND INSURING AGREEMENT COVERAGE A(3)

In consideration of the premium charged, it is hereby understood and agreed that Clause 1. Insuring Agreements Coverage A: Securities Broker-Dealer Errors & Omissions paragraph (3) is hereby amended as follows;

> (3)  in **Failing to Supervise** a **Registered Representative**, or a **Former Registered Representative**, in connection with any activity of such **Registered Representative**, other than the rendering of or failure to render **Professional Services** by such **Registered Representative**, unless otherwise excluded under this policy, with the exception of the following exclusions; (c), (h), (q), (r), (s), (x), (y).

  ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   16

Policy No.:    FL5EO00106-191                            Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## TRANSFER FRAUD EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that Clause 3. EXCLUSIONS is amended to include the following at the end thereof;

Alleging, arising out of, based upon or attributable to **Loss** resulting directly from the **Insured** having, in good faith, transferred or delivered customer or client funds, in reliance upon a fraudulent instruction transmitted to the **Insured**, including but not limited to via tele facsimile, telephone, or electronic mail, unless otherwise excluded under fidelity bond FL5FD00082, issued by Everest Reinsurance Company.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   17

Policy No.:    FL5EO00106-191                Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## SELLING AWAY EXCLUSION FOR PREVIOUSLY KNOWN INCIDENTS

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to coverage that would otherwise be provided through Insuring Agreements Coverage A (3), the **Insurer** shall not be liable for **Loss** in connection with any **Claim** arising out of or resulting from any error, omission, or **Wrongful Act** or **Interrelated Wrongful Act** occurring prior to 05/06/2016, if any **Insured** prior to 05/06/2016, knew or could have reasonably foreseen that such error, omission, or **Wrongful Act** or **Interrelated Wrongful Act** might be expected to be the basis of a **Claim** or suit.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   18

Policy No.:   FL5EO00106-191                                    Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## PROFESSIONAL SERVICES DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. Definitions paragraph (y) **Professional Services**, is amended by adding the following directly after paragraph (1)(ii);

(iii)  The **Administration of Employee Benefit Plans**, herein defined as (1) the consultation with participants in an employee benefit plan in order to explain the provisions of such plan, and (2) the handling of day-to-day ministerial functions required by such plan, including but not limited to the enrollment of participants, record keeping and the filing of reports with government agencies. The **Administration of Employee Benefit Plans** does not include third party claims administration.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity: Royal Alliance Associates, Inc.    Endorsement No.: 19

Policy No.: FL5EO00106-191    Effective date of Endorsement: 12/31/19

Issuing Company: Everest National Insurance Company

# CLAIM EXPENSES, SETTLEMENTS, JUDGMENTS (INCLUDING ADVANCEMENT OF CLAIM EXPENSES) CLAUSE AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 10. CLAIM EXPENSES, SETTLEMENTS, JUDGMENTS (INCLUDING ADVANCEMENT OF CLAIM EXPENSES) is deleted in its entirety and replaced with the following;

The **Insurer** shall have the right and duty to defend, subject to and as part of the **Policy Aggregate** and any applicable **Sublimit of Liability**, any **Claim** made against an **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported in writing to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** for which coverage is afforded by this policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

The **Insurer** shall have the right to make any investigation it deems necessary with respect to any **Claim** or notice of circumstances under this policy. For **Claims** solely involving the **Registered Representative,** the **Insurer** shall have the right to make, with the written consent of the **Registered Representative,** any settlement of a **Claim** under this policy it deems expedient. For **Claims** involving the **Entity Insured** or both the **Entity Insured** and the **Registered Representative,** the **Insurer** shall have the right to make, with the written consent of the **Entity Insured**, any settlement of a **Claim** under this policy it deems expedient.

The **Insured(s)** must consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insured(s)** are first made aware of the **Settlement Opportunity**, or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, for (1) **Claims** solely involving the **Registered Representative,** in the event the **Registered Representative(s)** do not consent to the settlement within the time frame described above, the **Insurer's** liability for the **Claim** shall not exceed the amount for which the **Insurer** could have settled the **Claim** plus **Claim Expenses** incurred up to the date of the refusal to settle, and for (2) **Claims** involving the **Entity Insured** or both the **Entity Insured** and the **Registered Representative,** in the event the **Entity Insured(s)** do not consent to the settlement within the time frame described above, the **Insurer's** liability for the **Claim** shall not exceed 50% in addition to the amount for which the **Insurer** could have settled the **Claim** plus **Claim Expenses** incurred up to the date of the refusal to settle.

In the event the **Registered Representative(s)** refuse to consent to a **Settlement Opportunity**, the **Insurer** shall have the right but not the duty to continue the defense of the **Claim** after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the **Claim** by tendering control of the defense to the **Insured**. In the event the **Entity Insured(s)** refuse to consent to a **Settlement Opportunity**, the **Insurer** shall have the right but not the duty to continue the defense of the **Claim** after **Claim Expenses** exceeds 50% in addition to the initial **Settlement Opportunity** plus **Claims Expenses** and may in such case

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

withdraw from the further defense of the **Claim** by tendering control of the defense to the **Entity Insured**.

In all events, the **Insurer** shall not be obligated to settle any **Claim**, pay any **Loss** or undertake or continue defense of any **Claim** after the applicable **Sublimit of Liability** or the **Policy Aggregate** has been exhausted by settlement of a **Claim(s)** or payment of **Loss**.  In each such case, the **Insurer** shall have the right to withdraw from the further defense of the **Claim** by tendering control of the defense to the **Insured(s).**

The **Insured** shall not admit liability for or settle any **Claim** or incur any **Claim Expenses** without the **Insurer's** prior written consent.  However, if the **Entity Insured** is able to dispose of all **Claims** which are subject to one Retention amount for an amount not exceeding the Retention amount (inclusive of **Claim Expenses**), then the **Insurer's** consent shall not be required for such **Claims**.

The **Insured(s)** shall give the **Insurer** and defense counsel full cooperation and such information as the **Insurer** and/or defense counsel reasonably request, including upon the **Insurer's** request, assisting in making settlements in the conduct of **Claims**, attending hearings, trials, arbitrations, mediations, and assisting in securing and giving evidence and obtaining the attendance of witnesses.

The **Insurer** shall not be obligated to defend any **Claims** or reimburse any **Insured** after the applicable **Sublimit of Liability** or **Policy Aggregate** has been exhausted, whichever occurs first.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.          Endorsement No.:   20

Policy No.:    FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## LOSS DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. DEFINITIONS, paragraph (v) **Loss**, is amended by deleting paragraph (4) and replacing it with the following;

(4)  return, restitution, reduction, disgorgement, forfeiture or rescission of commissions, fees or premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

| | |
|---|---|
| Named Entity:   Royal Alliance Associates, Inc. | Endorsement No.:   21 |

| | |
|---|---|
| Policy No.:   FL5EO00106-191 | Effective date of Endorsement:  12/31/19 |

Issuing Company: Everest National Insurance Company

## AMEND REGULATORY COVERAGE EXTENSION

In consideration of the premium charged, it is hereby understood and agreed that the Policy is amended as follows:

Solely with respect to a **Regulatory Proceeding** and/or **Regulatory Sanction:**

1.  Item 1. **Sublimit of Liability** of the Schedule of Sublimits is deleted in its entirety and replaced with the following;

    **Claims Against the Broker-Dealer**

    (i) $500,000     **Sublimit of Liability** for a **Regulatory Proceeding** and/or **Regulatory Sanction** against the **Broker-Dealer**

    (ii) $1,000,000     aggregate limit for all **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s)** against all **Broker-Dealers.**

    The **Sublimit of Liability** stated in (i) above is the total limit of the **Insurer's** liability for all **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s)** alleging the same **Wrongful Act** or **Interrelated Wrongful Act(s)** that are made against one  or more than one **Broker-Dealer**. The **Sublimit of Liability** stated in (i) above, shall be part of and not in addition to any other applicable **Sublimit of Liability**  for additional **Claims** made against an **Insured** which arise out of the same **Wrongful Act** or **Interrelated Wrongful Act(s).**

    The aggregate limit stated in (ii) above**,** is the total limit of the **Insurer's** liability for all  **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s)** first made against the **Broker-Dealer(s)** during the **Policy Period** and the **Discovery Period** (if applicable) and reported to the **Insurer** in accordance with the terms herein.  The **Sublimit of Liability** stated in (i) shall be part of and not in addition to the aggregate limit stated in (ii), as well as the **Policy Aggregate**.

2.  Item 2 Retention of the Schedule of Sublimits, paragraph (d), is the applicable retention for each **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s).**

3.  Clause 2 DEFINITIONS paragraph (c) **Broker-Dealer** is deleted in its entirety and replaced with the following:

    "**Broker-Dealer**" means any entity set forth as such in Endorsement No. 1 Listed Broker-Dealer Endorsement, attached to this Policy.

4.  Clause 2. DEFINITIONS paragraph (e) **Claim** is amended by the addition of the following:

    "**Claim**" shall also include the following;

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

    i.    if brought by a Governmental Entity on behalf of or in the name of a group of or collection of or any other third party clients of an **Insured**;

      (1)  written demand for monetary relief; or

      (2)  a civil or arbitration proceeding for monetary relief which is commenced by:
          a.   service of a complaint or similar pleading; or
          b.   receipt or filing of an arbitration demand or statement of claim;

    ii.   a **Regulatory Proceeding** against a **Broker-Dealer,** but solely with respect to **Claim Expenses** incurred by such **Broker-Dealer.  Claim Expenses** incurred in connection with a covered **Regulatory Proceeding,** shall be subject to the **Sublimit of Liability** and retention stated in paragraphs (1) and (2) above.

    iii.  a **Regulatory Sanction**, however, subject to the **Sublimit of Liability** and retention stated in paragraphs (1) and (2) above.

5.    Clause 2 DEFINITIONS paragraph (v) **Loss** subparagraph (3) is deleted in its entirety and replaced by the following:

    (3)     civil or criminal fines or penalties, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. Notwithstanding the foregoing, **Loss** shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than twice the amount of compensatory damages awarded and **Regulatory Sanctions(s)** imposed against the **Broker-Dealer** entity listed in Endorsement No.1, Listed Broker-Dealer Endorsement attached to this Policy (where insurable by law); and

6.    Clause 2 DEFINITIONS is amended by the addition of the following

- **Regulatory Proceeding** means any civil, administrative, regulatory, enforcement, subpoena, investigation, audit, sweep or arbitration brought against the **Broker-Dealer**, by any state or federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), however, solely when not brought on behalf of or in the name of a group of or collection of any other third party clients of an **Insured.**

- **Regulatory Sanction** means any civil fine or penalty imposed by a Governmental Entity against a **Broker-Dealer**, where insurable by law.

7.    Clause 3. EXCLUSIONS paragraph (n) is deleted in its entirety and replaced with the following;

    (n)  brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any state or federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), whether directly or indirectly, and whether brought in its capacity as trustee, liquidator, successor or assignee of an **Insured**, or in any other capacity and whether brought in its own name or in the name of any other entity; provided, however, this exclusion will not apply to: (1) **Claims Expense** of a **Broker-Dealer** in connection with a covered **Regulatory Proceeding,** (2) any **Claim** brought solely in such

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Governmental Entity's capacity as a customer or client of an **Insured** in the ordinary course of business and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**; (3) **Claim Expenses** of a **Registered Representative** in connection with a covered **Disciplinary Proceeding**;  (4) any **Claim** brought on behalf of or in the name of a group of or collection of or any other third party clients of an **Insured**; or (5) a **Regulatory Sanction** against a **Broker-Dealer.**

8. Clause 3 EXCLUSIONS is amended by the addition of the following:
   Solely with respect to any **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s);**

   - alleging, arising out of, based upon or attributable to any act, error, omission, fact or circumstance occurring prior to 12/31/2017**,** if, on or before 12/31/2017, the **Insured** knew or reasonably could have foreseen that such act, error, omission, fact or circumstance could give rise to a **Regulatory Proceeding(s)** and/or **Regulatory Sanction(s)**; or

9. Solely with respect to (n) (4) in paragraph 7. Above, any **Claim** brought on behalf of or in the name of a group of or collection of any other third party client(s) of an **Insured** shall include **Claims**;

   a. where such Governmental Entity was not directly solicited by such third party client(s) for purpose of making such **Claim**, and/or
   b. where such Governmental Entity demands monetary remediation on behalf of such third party client(s).

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   22

Policy No.:   FL5EO00106-191                          Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# NOTICE AND REPORTING PERIOD AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 9. NOTICE AND REPORTING paragraph (a) is deleted in its entirety and replaced with the following;

(a)   The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** as soon as practicable after any **Insured** first becomes aware of the **Claim**. In all events, notification must be provided no later than either:

    (i)   the end of the **Policy Period** or **Discovery Period** (if applicable); or

    (ii)   If the policy is cancelled or non-renewed by the **Insured** or **Insurer**, within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable); or

    (iii)   If the policy is continuously renewed by the **Insurer**, within sixty (60) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   23

Policy No.:   FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## ADDITIONAL BROKER-DEALER ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Definition of "**Broker-Dealer**" is amended to include the following additional entity(ies), subject to the respective **Retroactive Date**:

| BROKER-DEALER | RETROACTIVE DATE |
|---|---|
| Vision 2020 Wealth Management Corp. | full prior acts |
| Advisor Group, Inc. | full prior acts |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   24

Policy No.:   FL5EO00106-191                           Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## BROKER-DEALER DEFINITION AMENDED

In consideration of the premium charged it is hereby understood and agreed that in Clause 2.
**DEFINITIONS**, paragraph (C), "**Broker-Dealer**," is deleted in its entirety and replaced with the following;

(c)   **"Broker-Dealer"** means (1) any entity set forth as such in any endorsement to this policy; (2) any
**Subsidiary** and any Office of Supervisory Jurisdiction ("OSJ") of such entity described in
subparagraph (1) as a **Broker- Dealer**; (3) any past, present or future director, officer, partner or
employee of the **Broker-Dealer** acting in their capacity as such; (4) any past, present or future
registered principal of an OSJ acting in their capacity as such; and (5) any leased employee of
the **Broker-Dealer** described in subparagraph (1) and (2) or of Advisor Group Holding's, acting in
their capacity as such.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   25

Policy No.:    FL5EO00106-191                            Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# OTHER INSURANCE CLAUSE AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause **15. OTHER INSURANCE** is amended as follows;

### 15.  OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Policy Aggregate** or any applicable **Sublimit of Liability** provided by this policy.  Provided, however, this policy shall be primary to, and not excess of, any Investment Management Professional Liability policy issued to Genovese Burford & Brothers Wealth Management and Retirement Plan Management, Inc.

This policy applies to the amount of **Loss** which is more than the limits of insurance of the other insurance and the total of all Retentions and self-insured amounts under such other insurance.  This policy shall not pay more than the applicable **Sublimit of Liability** or the **Policy Aggregate**.

If any **Claim** under this policy is also covered by one or more other policies issued by the **Insurer**, or any of its affiliates, to the persons or entities insured under this policy or to any person who controls, is controlled by, or is affiliated by common control with, said persons or entities, then with respect to any such **Claims**:

(a)    the **Insurer** shall not be liable under this policy for a greater proportion of the loss than the applicable **Sublimit of Liability** or **Policy Aggregate** under this policy bears to the total limits of  liability of all such policies, and

(b)    the maximum amount payable under all such policies shall not exceed the limit of liability of that policy referred to above which has the highest applicable limit of liability.

Nothing contained in this Clause shall be construed to increase the **Policy Aggregate** of this policy or the limits of liability of any policy issued by an affiliate of the **Insurer**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:  **Royal Alliance Associates, Inc.**      Endorsement No.:  26

Policy No.:  **FL5EO00106-191**                  Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## NEW YORK AMENDATORY CANCELLATION AND NONRENEWAL

The policy is hereby amended as follows, but solely with respect to **Insured**s located in the State of New York:

I.    The Cancellation and When We Do Not Renew provisions are deleted and replaced by the following:

    (a)    CANCELLATION BY THE INSURED

        This policy may be cancelled by the **Insureds' Representative** by surrender of this policy to the **Insurer** or by giving written notice to the **Insurer** stating when thereafter such cancellation shall be effective.  The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender.

    (b)    CANCELLATION, NONRENEWAL AND CONDITIONAL RENEWAL BY THE INSURER

        (i)    If this policy has been in effect for sixty (60) or fewer days when cancellation notice is mailed, and this policy is not a renewal of a policy issued by the **Insurer**, then this policy may be cancelled by the **Insurer** by mailing or delivering to the **Insureds' Representative**, and to its authorized insurance agent or broker, written notice stating when not less than twenty (20) days thereafter (fifteen (15) days thereafter if cancellation is because of one of the reasons for cancellation set forth in subsection (ii) below) the cancellation shall be effective.   Notice of cancellation issued by the **Insurer** shall specify the grounds for cancellation.

        (ii)    If this policy has been in effect for more than sixty (60) days when notice of cancellation is mailed, or if this policy is a renewal of a policy issued by the **Insurer**, then this policy may be cancelled by the **Insurer** by mailing or delivering to the **Insureds' Representative**, and to its authorized insurance agent or broker, written notice stating when not less than fifteen (15) days thereafter the cancellation shall be effective; however, such cancellation must be based on one or more of the following:

            (A)    nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the **Insureds' Representative** of the amount due;

            (B)    conviction of a crime arising out of acts increasing the hazard **Insured** against;

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(C)    discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a **Claim** thereunder;

(D)    after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard **Insured** against, and which occurred subsequent to inception of the current **Policy Period**;

(E)    material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F)    required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the **Insurer** would jeopardize the **Insurer**'s solvency or be hazardous to the interests of **Insured**s of the **Insurer**, its creditors or the public;

(G)    a determination by the New York Superintendent of Insurance that the continuation of the policy would violate, or would place the **Insurer** in violation of, any provision of the New York Insurance Law;

(H)    revocation or suspension of an **Insured**'s license to practice his profession; or

(I)    where the **Insurer** has reason to believe that there is a probable risk or danger that the **Insureds' Representative**, the **Named Entity** or an **Insured** will destroy or permit the destruction of the **Insured** property for the purpose of collecting the insurance proceeds, provided, however, that:

(1)    a notice of cancellation on this ground shall inform the **Insureds' Representative** in plain language that the **Insureds' Representative** must act within ten days if review by the department of the ground for cancellation is desired pursuant to item (3) of this subparagraph (I);

(2)    notice of cancellation on this ground shall be provided simultaneously by the **Insurer** to the department; and

(3)    upon written request of the **Insureds' Representative** made to the department within ten days from the **Insureds' Representative**'s  receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not the **Insurer** has satisfied the criteria for cancellation specified in this subparagraph; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

Notice of cancellation by the **Insurer** shall specify the grounds for cancellation.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(iii)

(A)    The **Insurer** shall mail to the **Insureds' Representative**, and to its authorized insurance agent or broker, written notice indicating the **Insurer's** intention:

(1)    not to renew this policy;

(2)    to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusions or upon increased premiums in excess of ten percent; (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating, loss rating, or audit);

(3)    that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the **Insureds' Representative** that a second notice shall be mailed at a later date indicating the **Insurer's** intention as specified in subparagraph (1) or (2) of this paragraph (A) and that coverage shall continue on the same terms, conditions and rates as expiring, until the later of the expiration date or sixty (60) days after the second notice is mailed or delivered; such alternative renewal notice also shall advise the **Insureds' Representative** of the availability of loss information of the **Insureds** and, upon written request, the request, the **Insurer** shall furnish such loss information within ten (10) days to the **Insureds' Representative**.

(B)    A nonrenewal notice as specified in subparagraph (1), a conditional renewal notice as specified in subparagraph (2), and the second notice described in subparagraph (3) of paragraph (A) of this subsection (iii) shall contain the specific reason or reasons for nonrenewal or conditional renewal, and set forth the amount of any premium increase and nature of any other proposed changes.

(C)    The notice required by paragraph (A) of this subsection (iii) shall be mailed at least sixty (60) but not more than one hundred twenty (120) days in advance of the end of the **Policy Period**.

(D)

(1)    If the **Insurer** employs an alternative renewal notice as authorized by subparagraph (3) of paragraph (A) of this subsection (iii), the **Insurer** shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date or sixty (60) days after the mailing of the second notice described in such subparagraph.

(2)    Prior to the expiration date of the policy, in the event that an incomplete or late conditional renewal notice or a late nonrenewal notice is provided by the **Insurer**, the **Policy Period**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

shall be extended, at the same terms and conditions as the expiring policy, except that the annual aggregate limit of the expiring policy shall be increased in proportion to the policy extension, and at the lower of the current rates or the prior period's rates, until sixty (60) days after such notice is mailed, unless the **Insureds' Representative** elects to cancel sooner.

(3)     In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the **Insurer** on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required **Policy Period**, and at the lower of the current rates or the prior period's rates unless the **Insureds' Representative**, the Named Entity or the **Insured** during the additional required **Policy Period** has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(iv)     Nothing herein shall be construed to limit the grounds for which the **Insurer** may lawfully rescind this policy or decline to pay a **Claim** under this policy.

(v)     Notice required herein to be mailed to the **Insureds' Representative** shall be mailed to the **Insureds' Representative** at the address shown in Item 2 of the Declarations.

Notice required herein to be mailed by the **Insurer** shall be sent by registered, certified or other first class mail.  Delivery of written notice shall be equivalent to mailing.

Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** shall terminate at the effective date and hour of cancellation or nonrenewal specified in such notice.

(vi)     If this policy shall be cancelled by the **Insureds' Representative**, the **Insurer** shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition of cancellation, but such payment shall be made as soon as practicable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:  27

Policy No.:   FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# NEW YORK AMENDATORY ENDORSEMENT - DISCOVERY CLAUSE

This policy is amended as follows, but solely with respect to a **Registered Representative** with a **Certificate** bearing an address in the State of New York:

I.

Clause 12. DISCOVERY is modified to the extent necessary to provide the following Discovery:

DISCOVERY REPORTING PERIOD COVERAGE - REGULATION 121 (CLAIMS- MADE POLICIES)

A. ADDITIONAL DEFINITIONS

Solely in regard to this endorsement, the following definitions shall apply:

1) "**Termination of Coverage**" means:

(a) cancellation or non- renewal of this policy by the **Insurer** or the **Insureds' Representative**; or

(b) decrease in the limit of liability, reduction of coverage, increased deductible or self- insured retention, new exclusion, or any other change in coverage less favorable to the **Insured**. **Discovery Reporting Period Coverage** shall be offered for these reasons at the request of the **Registered Representative** and shall only apply in regard to that coverage terminated. This subparagraph 1(b) shall apply only if Section I., paragraph M of this endorsement does not apply.

2) "**Public Entity**" means a **Public Entity** as defined in section 107(a)(51) of the New York Insurance Law.

Upon **Termination of Coverage** afforded by this policy, and only to the extent coverage is terminated, the **Registered Representative** shall have the right to an **Automatic Discovery Reporting Period** or an **Optional Discovery Reporting Period** as described in Section I., paragraph C and Section I., paragraph D of this endorsement.

B. ADVICE REGARDING DISCOVERY REPORTING PERIODS

With regard to **Termination of Coverage** by reason of A.1)(a) above, the **Insurer** shall advise the **Registered Representative**, in writing, of the **Automatic Discovery Reporting Period** and the availability of, the premium for and the importance of purchasing the **Optional Discovery Reporting Period** (the "**Advice**"). The **Advice** shall be sent no earlier than the date of notification of **Termination of Coverage** nor later than thirty (30) days after the effective date of **Termination of Coverage**. If cancellation of the policy is due to non- payment of premium or fraud on the part of the **Insured** or the **Insureds' Representative**, the **Insurer** will not be required to provide a premium quotation for the **Optional Discovery Reporting Period** unless requested by the **Registered Representative**.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## C. AUTOMATIC DISCOVERY REPORTING PERIOD

The **Registered Representative** shall be provided with, for no additional premium, a period of sixty (60) days (ninety (90) days if the **Insured** is a **Public Entity**) following the effective date of **Termination of Coverage** (herein referred to as the **Automatic Discovery Reporting Period**) in which to give written notice to the **Insurer** of **Claims** first made against the **Insured** during said sixty (60) (or ninety (90)) day period for any **Wrongful Act** occurring prior to such **Termination of Coverage** and otherwise covered by this policy. The **Automatic Discovery Reporting** Period shall be void *ab initio* if the **Optional Discovery Reporting Period** becomes effective. For the purposes of determining the length of the **Optional Discovery Reporting Period**, the **Automatic Discovery Reporting Period** shall be included.

## D. OPTIONAL DISCOVERY REPORTING PERIOD

The **Registered Representative** shall have the right, upon payment of the required additional premium plus any premium for the policy which is owed and not yet paid, to a period of three (3) years following the effective date of **Termination of Coverage** solely with respect to the coverage terminated (herein referred to as the **Optional Discovery Reporting Period**) in which to give written notice to the **Insurer** of **Claims** first made against the **Insured** during said three (3) year period for any **Wrongful Act** occurring prior to such **Termination of Coverage** and otherwise covered by this policy. Any return premium due the **Registered Representative** shall be credited toward the premium for the **Optional Discovery Reporting Period** if elected.

## E. NOTICE OF WRITTEN ACCEPTANCE

The **Registered Representative** shall submit written acceptance of the **Optional Discovery Reporting Period** (along with the payment of premium as described in Section I., paragraph D. above) by the later of:

(1)    sixty (60) days after the effective date of **Termination of Coverage**; or
(2)    thirty (30) days after the **Insurer** has mailed or delivered the **Advice** as described in Section I., paragraph B. above (if the **Insurer** is obligated to give such written **Advice**).

## F. PREMIUM CHARGE FOR THE OPTIONAL DISCOVERY REPORTING PERIOD

1)    The additional premium for the **Optional Discovery Reporting Period** shall be based upon the rates in effect on the date the policy was issued or last renewed. The premium for the **Optional Discovery Reporting Period** shall be commensurate with the coverage provided. Upon **Termination of Coverage** on a date other than the policy's anniversary date, the cost of the **Optional Discovery Reporting Period** shall be appropriately reduced.

2)    The additional premium for the **Optional Discovery Reporting Period** shall be priced in accordance with the specifications of the New York Regulation 121 Policyholder Disclosure attached to this policy.

## G. CANCELLATION FOR NON- PAYMENT OF PREMIUM OR FRAUD - POLICIES IN EFFECT LESS THAN ONE (1) YEAR

If coverage is terminated because of non-payment of premium or fraud, and at the effective date of such **Termination of Coverage**, the **Insurer** has provided this insurance to the **Registered Representative** on a claims-made basis without interruption for less than one (1) year, the **Registered Representative** shall have no right to elect and purchase the **Optional Discovery Reporting Period**. For purposes of this paragraph, the **Automatic Discovery Reporting Period** shall not be considered as time when the **Insurer** was providing claims- made coverage.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

H. COVERAGE FOR INSUREDS WITH PRIOR AFFILIATION

During the policy and any **Discovery Reporting Period**, a person covered by the **Insured's** policy during such affiliation shall continue to be covered under such policy and any **Discovery Reporting Period** after such affiliation has ceased for such persons covered **Wrongful Acts** during such affiliation.

I. CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES

If this policy is issued to a corporation, partnership or other entity, this policy shall provide **Discovery Reporting Period** coverage upon **Termination of Coverage** to any person covered under the policy, as respects only himself or herself, if:

1)      such entity has been placed in liquidation or bankruptcy or permanently ceases operations;

2)      the entity or designated trustee does not purchase the O**ptional Discovery Reporting Period**; and

3)      such person requests the **Optional Discovery Reporting Period** within one hundred twenty (120) days of **Termination of Coverage**.

The **Insurer** shall have no obligation to provide the **Advice** described in Section I., paragraph B. above to any such person. The **Insurer** may charge the person for whom **Discovery Reporting Period** coverage is provided a premium commensurate with such coverage. If such person does not pay the required additional premium when due, then the **Optional Discovery Reporting Period** for such person shall be void *ab initio*.

J. FULLY EARNED AND NON- CANCELABLE

The additional premium for the **Optional Discovery Reporting Period** shall be fully earned at the inception of the **Optional Discovery Reporting Period**. The **Optional Discovery Reporting Period** is not cancelable except for non- payment of premium.

K. LIMITS OF LIABILITY FOR THE DISCOVERY REPORTING PERIODS

1)      Upon **Termination of Coverage**, the **Sublimit of Liability** available to a **Registered Representative** for the **Automatic Discovery Reporting Period** shall be at least equal to the amount of coverage remaining under the aggregate **Sublimit of Liability** for all **Claims** available to such **Registered Representative** in effect at the inception of the **Policy Period.** This paragraph shall apply for the **Optional Discovery Reporting Period** only if Section I., paragraph M of this endorsement applies.

2)      If as of the effective date of **Termination of Coverage**, insurance coverage has been provided by the **Insurer** to the **Registered Representative** on a claims- made basis without interruption for at least three (3) years, the aggregate **Sublimit of Liability** for the **Optional Discovery Reporting Period** shall be equal to one hundred percent (100%) of the aggregate **Sublimit of liability** for all **Claims** available to such **Registered Representative** in effect immediately prior to **Termination of Coverage**.

3)      If as of the effective date of **Termination of Coverage**, insurance coverage has been provided by the **Insurer** to the **Registered Representative** on a claims- made basis without interruption for less than three (3) years, the aggregate **Sublimit of Liability** for the **Optional Discovery**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**Reporting Period** shall be equal to the greater of: (a) the amount of coverage remaining in the policy available to such **Registered Representative** immediately prior to **Termination of Coverage**; or (b) fifty percent (50%) of aggregate **Sublimit of Liability** for all **Claims** available to such **Registered Representative** in effect immediately prior to **Termination of Coverage**.

4)   Where **Termination of Coverage** is due only to a decrease in the policy's aggregate limit of liability, the aggregate **Sub-Limit of Liability** available to a **Registered Representative** for the **Optional Discovery Reporting Period**, if elected, shall be no greater than the amount of such decrease. In such instance, the aggregate **Sub-Limit of Liability** available to such **Registered Representative** provided for the **Optional Discovery Reporting Period** shall replace, and shall not be in addition to, the aggregate **Sub-Limit of Liability** available to such **Registered Representative** under the **Automatic Discovery Reporting** Period.

## L. RETROACTIVE DATE/CONTINUITY DATE ADVANCEMENT

If this policy contains a Retroactive Date or a Continuity Date, it may not be changed during the term of the claims- made relationship and any **Discovery Reporting Period**.

## M. EXCEPTIONS TO THIS ENDORSEMENT

If this policy contains:

1)   a limit of liability of $5,000,000 or higher; or
2)   a deductible or retention of at least $100,000,

or if the **Named Entity** is a "**Large Commercial Insured**", defined as a commercial risk insured that:

a)   has a net worth of at least $7,500,000, as determined by an independent certified public accountant, as of the **Insured's** fiscal year end immediately preceding the policy's effective date;
b)   has gross assets exceeding $25,000,000 and a net worth of at least $3,000,000, as determined by an independent certified public accountant, as of the **Insured's** fiscal year end immediately preceding the policy's effective date;

c)   is a for-profit business entity that generates annual gross revenues exceeding $25,000,000, and has a net worth of at least $1,500,000, as determined by an independent certified public accountant, as of the **Insured's** fiscal year end immediately preceding the policy's effective date;

d)   is a for-profit business entity that has gross assets exceeding $25,000,000 and generates annual gross revenues exceeding $25,000,000, as determined by an independent certified public accountant, as of the **Insured's** fiscal year end immediately preceding the policy's effective date; or

e)   is a not-for-profit organization or public entity with an annual budget exceeding $25,000,000 for each of its three (3) fiscal years immediately preceding the policy's effective date;

then the following sections of this endorsement shall not apply:

i)   Section I, subparagraph A 1(b) (ADDITIONAL DEFINITIONS, "**Termination of Coverage**" for decrease in the limit of liability, reduction of coverage, increased deductible or self- insured retention, new exclusion, or any other change in coverage less favorable to the Insured);

ii)   Section I., paragraph B (ADVICE REGARDING DISCOVERY REPORTING PERIODS);

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

iii)     Section I., subparagraph E 2) (NOTICE OF WRITTEN ACCEPTANCE (within 30 days of the mailing of the **Advice**));

iv)     Section I., subparagraphs K 2), 3) and 4) (LIMITS OF LIABILITY FOR THE DISCOVERY REPORTING PERIODS); and

v)      Section I., paragraph I (CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES);

Additionally, Section I, paragraph D (OPTIONAL DISCOVERY REPORTING PERIOD) shall be amended to afford to the **Registered Representative** the right to a one (1) year period. All references to a "three (3) year period" are thereby deleted.

II.

The following provision is hereby added to the policy:

CLAIMS- MADE AND REPORTED POLICIES - NOTICE OF CLAIM:

If this policy is issued on a "claims- made and reported" basis (where it is required that the **Claim** be made against the **Insured** and reported to the **Insurer** during the same **Policy Period**), the following requirement as regards Notice to the **Insurer** shall apply:

**Claims** first made against the **Insured** shall be reported to the **Insurer** as soon as possible during the **Policy Period**, during the continuous renewal thereof, **Automatic Discovery Reporting Period** or the **Optional Discovery Reporting P**eriod.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Named Entity:   Royal Alliance Associates, Inc.     Endorsement No.:   28

Policy No.:   FL5EO00106-191     Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## NEW YORK AMENDATORY ENDORSEMENT
## TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

Wherever used in this endorsement: 1) "we", "us", and "our" mean the insurance company which issued this policy;  2) "first Named Insured" and "insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under the policy.

The policy is hereby amended as follows, but solely as respects a **Registered Representative**  with a Certificate bearing an address in the State of New York:

The following provision is added to the section titled **CONDITIONS:**

**Transfer of Duties When a Limit of Insurance is Used Up**

1.  If we conclude that, based on wrongful acts, personal injury offenses, occurrences, claims or suits which have been reported to us and to which this insurance may apply, a limit of liability shown in the Declarations is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

2.  When a limit of insurance described in paragraph 1. above has actually been used up in the payment of judgments or settlements:

    a.  We will notify the first Named Insured, in writing, as soon as practicable, that:

        (i)       Such a limit has actually been used up; and

        (ii)      Our duty to defend **Claims** seeking **Damages** subject to that limit has also ended.

    b.  We will initiate, and cooperate in, the transfer of control, to any appropriate **Insured**, of all **Claims** seeking **Damages** which are subject to that limit and which are reported to us before that limit is used up.  That **Insured** must cooperate in the transfer of control of said **Claims**.
    We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such **Claims** until such transfer is completed, provided the appropriate **Insured** is cooperating in completing such transfer.

        We will take no action whatsoever with respect to any **Claim** seeking **Damages** that would have been subject to that limit, had it not been used up, if the **Claim** is reported to us after that limit of insurance has been used up.

    c.  The first Named Insured, and any other **Insured** involved in a **Claim** seeking **Damages** subject to that limit, must arrange for the defense of such **Claim**  within such time period as agreed to

<div style="border:2px solid black">

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

</div>

between the appropriate **Insured** and us.  Absent any such agreement, arrangements for the defense of such **Claim** must be made as soon as practicable.

3.  The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph 2.b. above.

    The duty of the first Named Insured to reimburse us will begin on:

    a.  The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph 1. above; or

    b.  The date on which we sent notice in accordance with paragraph 2.a. above, if we did not send notice in accordance with paragraph 1. above.

4.  The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   29

Policy No.:   FL5EO00106-191                          Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## NEW YORK CLAIMS-MADE AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy;  and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Reperesentitive, Insured or equivilent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that, solely as respects a **Registered Representative** with a Certificate bearing an address in the State of New York except as otherwise indicated, a **Claim** will be deemed "first made" for the purposes of this policy when the **Insurer** receives written notice of the **Claim** or suit from the **Insured**, an Other Insured(s) or a third party. A **Claim** will be also deemed "reported" to the **Insurer** on the date notice that it is so received. **Claims** reported to the **Insurer** alleging the same or related Wrongful Acts shall be considered reported to the **Insurer** at the time and during the **Policy Period** when the first such **Claim** was reported.

Accordingly, except as indicated below and subject to the policy's other terms and conditions, this policy shall provide coverage for **Claim**s for which notice is first received by the **Insurer** during the **Policy Period** (or the **Discovery Period**, if applicable) even if such **Claim** was filed against, sent to or delivered to, or received by the **Insured** or an Other Insured(s) prior to the inception date of this policy. This policy shall not provide coverage for **Claim**s for which notice is first received by the **Insurer** prior to the inception date of the policy or subsequent to the expiration date of the policy (or the **Discovery Period**, if applicable.)

Notwithstanding the above, in the event a **Claim** is filed against, sent or delivered to, or received by the **Insured** or an Other Insured(s) prior to the inception date of this policy but notice of which is not received by the **Insurer** until after the inception date of this policy (and prior to the expiration date of the policy or the **Discovery Period**, if applicable), coverage under this policy shall only apply (subject to the policy's other terms and conditions) only as follows:

(a)     If at the time the **Claim** was filed against, sent or delivered to, or received by the **Insured** or an Other Insured(s), there was in existence at that time a valid and collectible management liability policy, providing substantially similar coverage as is provided by this policy, issued to the **Insured** by the **Insurer** (or by any other member company of Everest National Insurance Company.) of which this policy is a renewal (hereinafter referred to as the "Former Policy"), then

(b)     Coverage shall be afforded under this policy in an amount <u>not greater than</u> the amount of coverage which would have been provided for the **Claim** under the Former Policy if notice of the **Claim** had been received by the **Insurer** during the **Policy Period** of such Former Policy. The foregoing sentence may result in (but not be limited to): (1) reducing the limit of liability available for such a **Claim** to the available limit of liability applicable to the Former Policy; (2) increasing the applicable retention amount to that retention amount applicable to the Former Policy; or (3) reducing or eliminating coverage due to exclusions or other restrictions appearing in the Former Policy but eliminated, in part or in whole, in this policy.  No coverage shall be afforded under this endorsement if there

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

was not in existence a Former Policy at the time the **Claim** was filed against, sent or delivered to, or received by the **Insured** or an Other Insured(s).

Nothing in this endorsement shall be construed to provide coverage for **Claim**s notice of which is not received by the **Insurer** during the **Policy Period** of this policy (or the **Discovery Period**, if applicable). Further, the **Insured** or the Other Insured(s) shall, as a condition precedent to the obligations of the **Insurer** under this endorsement, give written notice to the **Insurer** as soon as practicable after receiving a **Claim** or becoming aware that a **Claim** has been filed against or sent or delivered to the **Insured** or an Other Insured(s).

Nothing in this endorsement shall be construed to limit the rights of the **Insurer** under the clause in the policy entitled, CLAIM EXPENSES, SETTLEMENTS, JUDGMENTS (or any other clause bearing a similar title and addressing the same issues), as respects the defense and settlement of a **Claim**.

Nothing in this endorsement shall be construed to provide coverage for a **Claim** under the Former Policy, nor shall this endorsement ever result in providing coverage under this policy for Loss for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the Former Policy.

The **Insurer's** limit of liability for **Claims** as described in this endorsement shall be part of and not in addition to the **Sublimit of Liability** stated on the Declarations page of this policy for all **Claims** under this policy and nothing in this endorsement shall be construed to increase the **Insurer's** limit of liability as therein stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

| | |
|---|---|
| Named Entity:   Royal Alliance Associates, Inc. | Endorsement No.:   30 |
| Policy No.:   FL5EO00106-191 | Effective date of Endorsement:  12/31/19 |

Issuing Company: Everest National Insurance Company

# NEW YORK AMENDATORY ENDORSEMENT – NY STATUTE 3420

Wherever used in this endorsement: 1) "we", "us", "our" and "Insurer" mean the insurance company which issued this policy;  2) "you", "your", "Insured" and "first Named Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; 3) "other Insured(s)" means all other persons or entities afforded coverage under the policy; 4) "Discovery Period" means Discovery Period or Extended Reporting Period, as defined in the policy; and 5) "Claim" means Claim or Suit as defined in the policy.

It is hereby understood and agreed that the policy is amended as follows, but solely as respects a **Registered Representative** with a Certificate bearing an address in the State of New York:

A.       The following provisions are hereby added to the policy:

**FAILURE TO GIVE NOTICE WITHIN PRESCRIBED TIME:**

Failure to give any notice required to be given by this policy, or any policy of which this is a renewal, within the prescribed time shall not invalidate any **Claim** made against an **Insured** if:

(a)       it shall be shown not to have been reasonably possible to give notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter; or

(b)       the failure to provide timely notice has not prejudiced the **Insurer**.

Any such **Claim** shall be deemed to have been first made against the **Insured** and noticed to the **Insurer** within the **Policy Period** or **Discovery Period** of the policy issued by the **Insurer** (the "Noticed Policy") in which the **Insurer** received notice of the **Claim**; provided that the coverage afforded with respect to the Noticed Policy shall be in an amount <u>not greater than</u> the amount of coverage afforded with respect to the **Policy Period** of the policy issued by the **Insurer** (the "Former Policy") in which the **Claim** was actually first made against the **Insured**. The foregoing sentence may result in (but not be limited to): (1) reducing the limit of liability available for such a **Claim** to the available limit of liability applicable to the Former Policy; (2) increasing the applicable retention amount to that retention amount applicable to the Former Policy; or (3) reducing or eliminating coverage due to exclusions or other restrictions appearing in the Former Policy but eliminated, in part or in whole, in the Noticed Policy.  No coverage shall be afforded under this endorsement if there was not in existence a Former Policy at the time the **Claim** was actually first made against the **Insured**.

With respect to subsection (b) above, any such **Claim** must be noticed during the **Policy Period** or **Discovery Period** of a Noticed Policy which is a renewal or extension of the Former Policy.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

Nothing in this endorsement shall be construed to provide coverage for a **Claim** under more than one **Policy Period** or **Discovery Period**.

**PREJUDICE:**

In the event that the **Insurer** alleges that it was prejudiced as a result of a failure to give notice within the time required under the policy, the burden of proof shall be on:

(a)    the **Insurer** to prove that it has been prejudiced, if the notice was provided within two years of the time required under the policy; or

(b)    the **Insured** to prove that the **Insurer** has not been prejudiced, if the notice was provided more than two years after the time required under the policy.

The **Insurer**'s rights shall not be deemed prejudiced unless the failure to timely provide notice materially impairs the ability of the **Insurer** to investigate or defend the **Claim**.

Notwithstanding the above, an irrebuttable presumption of prejudice shall apply if, prior to the notice, the **Insured**'s liability has been determined by a court of competent jurisdiction or by a binding arbitration; or if the **Insured** has resolved the **Claim** by settlement or other compromise.

**NOTICE TO AGENT:**

Notice given by or on behalf of the **Insured**, or written notice by or on behalf of the injured party or any other claimant, to any licensed agent of the **Insurer** in the state of New York, with particulars sufficient to identify the **Insured**, shall be deemed notice to the **Insurer**.

**INSOLVENCY/BANKRUPTCY OF INSURED:**

The insolvency or bankruptcy of the **Insured** shall not relieve the **Insurer** of its obligations under this policy as long as all policy requirements are met by **Insured**, its trustee or receiver in bankruptcy.   Should a covered judgment be rendered against an insolvent or bankrupt **Insured**, the **Insurer** shall be liable for the amount of such judgment not to exceed the applicable limit of liability under this policy.

B.    The Clause entitled, "**Action Against Us**" or "**Action Against Company**" is deleted in its entirety and replaced with the following:

No one may bring an action against us unless there has been full compliance with all the terms of this policy and the amount of the **Insured**'s obligation to pay has been finally determined either by:

1.   judgment against the **Insured** which remains unsatisfied at the expiration of thirty (30) days from the service of notice of entry of the judgment upon the **Insured** and upon us; or
2.   written agreement of the **Insured**, the claimant and us.

Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.   We may not be impleaded by the

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Insured** or its legal representative in any legal action brought against the **Insured** by any person or organization.

ALL OTHER TERMS CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Named Entity:   Royal Alliance Associates, Inc.         Endorsement No.:   31

Policy No.:    FL5EO00106-191                    Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# NOTICE TO NEW YORK INSUREDS POLICYHOLDER NOTICE – ADDENDUM TO DECLARATIONS
# NEW YORK REGULATION 121 ONE (1) YEAR and THREE (3) YEAR TAIL OPTIONS

This notice is an addendum to the Declarations which describes some of the major features of the policy. This notice shall be attached to and shall become part of the policy, but solely as respects a **Registered Representatives** with a Certificate bearing an address in the State of New York.

**PLEASE READ THIS NOTICE AND YOUR POLICY CAREFULLY** to determine your rights, duties and what is and what is not covered under your policy.  Only the provisions of your policy determine the scope of your insurance protection.  The following disclosure and notice requirements are being provided in accordance with New York Law:

1. **THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS**.  THE COVERAGE AFFORDED BY THIS POLICY IS LIMITED TO ONLY THOSE CLAIMS ACTUALLY MADE WHILE THE POLICY REMAINS IN EFFECT.  ALL COVERAGE UNDER THIS POLICY CEASES UPON TERMINATION OF THE POLICY, EXCEPT COVERAGE FOR CLAIMS REPORTED DURING THE AUTOMATIC EXTENDED REPORTING PERIOD OR DURING ONE OF THE OPTIONAL EXTENDED REPORTING PERIODS, IF PURCHASED.  THIS POLICY DOES NOT PROVIDE COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE OR PRIOR ACTS DATE (IF ANY).

2. **EXTENDED REPORTING PERIODS:**

   **Automatic Extended Reporting Period**

   THE AUTOMATIC EXTENDED REPORTING PERIOD SHALL APPLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE SIXTY (60) DAYS IMMEDIATELY FOLLOWING THE EFFECTIVE DATE OF TERMINATION OF COVERAGE.

   **One (1) Year Optional Extended Reporting Period**

   THE ONE (1) YEAR OPTIONAL EXTENDED REPORTING PERIOD SHALL APPLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE TWELVE (12) MONTHS IMMEDIATELY FOLLOWING THE EFFECTIVE DATE OF TERMINATION OF COVERAGE.   THE CLAIMS FIRST MADE MUST RESULT FROM INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE ON OR AFTER THE RETROACTIVE DATE OR PRIOR ACTS DATE (IF ANY) AND BEFORE TERMINATION OF COVERAGE.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Three (3) Year Optional Extended Reporting Period**

THE THREE (3) YEAR OPTIONAL EXTENDED REPORTING PERIOD SHALL APPLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE THIRTY-SIX (36) MONTHS IMMEDIATELY FOLLOWING THE EFFECTIVE DATE OF TERMINATION OF COVERAGE. THE CLAIMS FIRST MADE MUST RESULT FROM INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE ON OR AFTER THE RETROACTIVE DATE OR PRIOR ACTS DATE (IF ANY) AND BEFORE TERMINATION OF COVERAGE.

POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE EXTENDED REPORTING PERIODS.

3.  **THE CLAIMS-MADE RELATIONSHIP** - IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT DURING THE FIRST SEVERAL YEARS OF CONTINUING CLAIMS-MADE COVERAGE, CLAIMS-MADE PREMIUMS ARE COMPARATIVELY LOWER THAN OCCURRENCE COVERAGE PREMIUM.  AN INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

4.  **OPTIONAL EXTENDED REPORTING PERIOD PREMIUM CHARGES**

THE PREMIUM CHARGED FOR THE ONE (1) YEAR OPTIONAL EXTENDED REPORTING PERIOD WILL BE BASED ON THE COMPANY'S RATES IN EFFECT ON THE EFFECTIVE DATE OF THE POLICY AND IS REASONABLY ESTIMATED TO BE 100% OF THE CURRENT POLICY'S PREMIUM IN THE EVENT THAT THE POLICY IS TERMINATED ON THE NEXT ANNIVERSARY DATE.

THE PREMIUM CHARGED FOR THE THREE (3) YEAR OPTIONAL EXTENDED REPORTING PERIOD WILL BE BASED ON THE COMPANY'S RATES IN EFFECT ON THE EFFECTIVE DATE OF THE POLICY AND IS REASONABLY ESTIMATED TO BE 250% OF THE CURRENT POLICY'S PREMIUM IN THE EVENT THAT THE POLICY IS TERMINATED ON THE NEXT ANNIVERSARY DATE.

THERE IS NO ADDITIONAL PREMIUM FOR THE AUTOMATIC EXTENDED REPORTING PERIOD.

**THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY.  PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER INSURANCE ADVISOR.  THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.   THE THREE YEAR OPTIONAL EXTENDED REPORTING PERIOD MAY NOT BE REQUIRED TO BE OFFERED TO ALL INSUREDS.  PLEASE REFER TO THE NEW YORK AMENDATORY ENDORSEMENT – DISCOVERY PERIOD FOR APPLICABILITY.**

ALL OTHER TERMS CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:   Royal Alliance Associates, Inc.        Endorsement No.:   32

Policy No.:   FL5EO00106-191                           Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## AMEND LIMIT OF LIABILITY FOR LIFE PRODUCTS

In consideration of the premium charged, it is agreed that:

I.   Solely with respect to coverage provided for **Professional Services** as defined in Subsection 2(y)(1)(ii) of the policy, that are not processed through the Advisor Group Compensation System, ITEM 1. SUBLIMIT OF LIABILITY, Paragraphs (b) and (c) of the Declarations, are replaced with the following:

   (b) **Claims Against A Registered Representative and a Broker-Dealer:**

      (i) $2,000,000        each **Loss** (including **Claim Expenses**) arising from a Claim made against: (1) one **Registered Representative**; or (2) both one **Registered Representative** and any one **Broker-Dealer**

      (ii) $2,000,000       aggregate for all **Loss** for each **Registered Representative**

   **Claims  Against  A Registered Representative and no Broker-Dealer:**

      (i) $1,000,000        each **Loss** (including **Claim Expenses**) arising from a Claim made against: (1) one **Registered Representative**; or (2) both one **Registered Representative** and any one **Broker-Dealer**

      (ii) $1,000,000       aggregate for all **Loss** for each **Registered Representative**

   (c) **Claims Against Multiple Registered Representative and one or more Broker-Dealer:**

      $2,000,000        or an amount equal to the aggregate of all "each **Loss**" sub-limits described in paragraph (b) above for all **Registered Representatives** in the **Claim**, whichever amount is less.

   **Claims Against Multiple Registered Representative and no Broker-Dealer:**

      $1,000,000        or an amount equal to the aggregate of all "each **Loss**" sub-limits described in paragraph (b) above for all **Registered Representatives** in the **Claim**, whichever amount is less.

II.   Clause 2. DEFINITIONS is amended to include the following at the end thereof;

   "Advisor Group Compensation System" means a platform for the sharing of commission between the **Broker-Dealer** and **Registered Representative** in connection with the purchase or sale of **Life Products**.

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

Named Entity:    Royal Alliance Associates, Inc.          Endorsement No.:   33

Policy No.:    FL5EO00106-191                              Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# EXCLUSION (f) AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 3. EXCLUSIONS paragraph (f) is hereby deleted in its entirety and replaced with the following;

(f)        alleging, arising out of, based upon or attributable to: (1) any pension, welfare or other employee benefit plan or trust sponsored by any **Insured** or sponsored by any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any **Insured**, or in which any **Insured** has a financial interest; or (2) any plan in which an **Insured** is a participant or is a "named fiduciary," as defined in section 402(a) of the Employee Retirement Income Security Act of 1974 (and any amendments thereto);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Named Entity:   Royal Alliance Associates, Inc.          Endorsement No.:   34

Policy No.:   FL5EO00106-191                             Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

# DEFINITION OF LOSS AMENDED
# (TRAVEL EXPENSES)

In consideration of the premium charged it is hereby understood and agreed that in Clause 2. **DEFINITIONS**, paragraph (v), "**Loss**," is amended to include the following;

In the event that an Insurer requests an **Insured** to attend any hearings, depositions, arbitrations, mediations or trials related to the defense of a **Claim** ("Travel"), the **Insured** shall, with the **Insurer's** prior written consent, receive expense reimbursement for lodging, meal and transportation expenses incurred in connection with such Travel; provided that such expense reimbursement shall be limited to the following Sublimits:

$500            per day per **Insured**
$5,000          maximum available per **Insured** per **Policy Period**
$500,000        aggregate available for all **Insureds** for the **Policy Period.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   35

Policy No.:    FL5EO00106-191                Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## RECRUITMENT & SOLICITATION COVERAGE ENDORSEMENT
## (CLAIM EXPENSES ONLY)

In consideration of the premium charged, solely with respect to the coverage provided by this Endorsement, it is hereby understood and agreed the Policy is amended as follows;

1.  Clause 1 INSURING AGREEMENTS is deleted in its entirety and replaced with the following:

    COVERAGE RS:  Securities Broker-Dealer Recruitment & Solicitation Extension

    The **Insurer** will pay on behalf of a **Broker-Dealer** all **Claims Expenses** arising from an **RS Claim** first made against such **Broker-Dealer** during the **Policy Period**, or if applicable, the **Discovery Period**, and reported pursuant to Clause 9. Notice and Reporting, for any **Wrongful Act** in the solicitation or recruitment of a **Registered Representative.**

2.  Clause 2 DEFINITIONS paragraph (e) **Claim** is deleted in its entirety and replaced with the following:

    (e) **"RS Claim"** means the following if brought by any unaffiliated financial institution including but not limited to an insurance company, broker-dealer, insurance agency or registered investment advisor:

    (1) a written demand for monetary relief; or
    (2) a civil or arbitration proceeding for monetary relief which is commenced by:

        (i)  service of a complaint or similar pleading; or
        (ii) receipt or filing of an arbitration demand or statement of claim,

    arising out of any actual or alleged **Wrongful Act** in connection with the solicitation or recruitment of a **Registered Representatives** from such unaffiliated insurance company, broker-dealer, insurance agency or registered investment advisor.

3.  Clause 2 DEFINITIONS paragraph (c) **Broker-Dealer** is deleted in its entirety and replaced with the following:

    "**Broker-Dealer**" means any entity set forth as such in Endorsement No.1, Listed Broker-Dealer Endorsement, attached to this Policy.

4.  Item 1. Sublimit of Liability of the Schedule of Sublimits is deleted in its entirety and replaced with the following:

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Claims Against the Broker-Dealer Coverage RS**

    (i)  $250,000        **Sublimit of Liability** for **Claims Expenses** arising from a **RS Claim** made against the **Broker-Dealer**

    (ii) $1,000,000      aggregate limit for all **Claim Expenses** arising from all **RS Claims** made against the **Broker-Dealer.**

5.    Item 2. Retention of the Schedule of Sublimits paragraph (d), is the applicable retention for each **RS Claim**.

6.    Clause 3. EXCLUSIONS paragraph (g) is deleted in its entirety and replaced with the following:

    (g)  alleging, arising out of, based upon or attributable to:

        (1)  any business interference with clients' lists; or
        (2)  any fees, commissions, brokerage monies or other charges for any **Professional Services**; or
        (3)  any contract dispute between any **Insureds**, or between the **Insureds** and any other entities, insurance companies or securities broker-dealers;

    provided however, that sections (1) and (3) of this exclusion shall not apply to a **RS Claim;**

7.    Clause 3. EXCLUSIONS is amended by the addition of the following:

    •    alleging, arising out of, based upon or attributable to any act, error, omission, fact or circumstance occurring prior to 12/31/2017, if, on or before 12/31/2017, the **Insured** knew or reasonably could have foreseen that such act, error, omission, fact or circumstance could give rise to a **RS Claim;**

8.    Clause 6. SUBLIMITS OF LIABILITY is amended by the addition of the following:

    •    *Sublimits of Liability for Claims against the Broker-Dealer for Coverage RS*

    The **Sublimit of Liability** stated in Item 1. Sublimit of Liability of the Schedule of Sublimits **Claims Against the Broker-Dealer Coverage RS** (i) is the limit of the **Insurer's** liability for all **Claim Expenses** under Coverages RS arising out of all **RS Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Act** that are made against one  or more **Broker-Dealer**.  This **Sublimit of Liability** shall apply and be in effect throughout the settlement and/or satisfaction of all such **RS Claims**, regardless of the number of **Broker-Dealers** in the **Claim**.

    The aggregate limit stated in Item 1. Sublimit of Liability of the Schedule of Sublimits **Claims Against the Broker-Dealer Coverage RS** (ii) is the total limit of the **Insurer's** liability for all **Claims Expenses** under Coverages RS arising out of all **RS Claims** first made against the **Broker-Dealer(s)** during the **Policy Period** and the **Discovery Period** (if applicable) and reported to the **Insurer** in accordance with the terms herein.

    The **Sublimit of Liability** stated in Item 1. (i) shall be part of and not in addition to the aggregate limit stated in Item 1. (ii), as well as the **Policy Aggregate**.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   36

Policy No.:     FL5EO00106-191                Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## SIGNATOR EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

Clause 3 Exclusions is amended to include the following at the end thereof;

The Insurer shall not be liable for **Loss** in connection with any **Claim**, alleging, arising out of, based upon or attributable to any **Wrongful Act** of **Signator**, or any **Loss** in connection with any **Insured** named as successor in interest to **Signator** in such **Claim.**

**Signator** means Signator Investors, including any subsidiary or affiliate thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

2-14179

Named Entity:    Royal Alliance Associates, Inc.        Endorsement No.:   37

Policy No.:    FL5EO00106-191                         Effective date of Endorsement:  12/31/19

Issuing Company: Everest National Insurance Company

## PRIOR BROKER-DEALER COVERAGE FOR FORMER SIGNATOR INVESTORS, INC REGISTERED REPRESENTATIVES

In consideration of the premium charged, and solely with respect to the **Acquired Registered Representatives** below, it is hereby understood and agreed that the policy is amended as follows:

1.    The term "**Broker-Dealer**" is amended to include any **Prior Broker-Dealer**, but solely with respect to the coverage afforded to an **Acquired Registered Representative** under Coverage B.  Nothing in this endorsement shall be construed to provide any coverage to any **Prior Broker-Dealer** or for any **Wrongful Act** of such **Prior Broker-Dealer**.

2.    The term "**Prior Broker-Dealer**" means Signator Investors, Inc. and Transamerica Financial Advisors Inc.  A **Prior Broker-Dealer** shall not under any circumstances be deemed an **Entity Insured** under this policy.

3.    Solely with respect to the coverage provided by this endorsements, this policy shall not apply to any **Claim** made against an **Acquired Registered Representative** alleging, arising out of, based upon or attributable to, directly or indirectly, any product, service or activity that was not an **Approved Product** by a **Prior Broker-Dealer**

4.    Coverage as is afforded under this endorsement for any **Loss** from any **Claim** made against an **Acquired Registered Representative** for a **Wrongful Act(s)** committed by such **Acquired Registered Representative** in the rendering of or failure to render **Professional Services** on behalf of a **Prior Broker-Dealer**, shall be specifically excess of any:

   (a)    indemnification provided by such **Prior Broker-Dealer** or John Hancock, to the extent that such **Prior Broker-Dealer** or John Hancock is permitted or required to indemnify such **Acquired Registered Representative**, pursuant to law, common or statutory, or contract, or its charter or by-laws; and

   (b)    insurance coverage afforded to any such **Acquired Registered Representative** applicable to such **Claim**.

   Further, in the event such other **Acquired Registered Representative** insurance described in subparagraph (b) above is provided by the **Insurer** or its affiliates (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or any applicable sublimit of liability, or failure to submit a notice of a **Claim** as required) then the **Insurer's** maximum liability for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit or sublimit of liability (as set forth on the Declarations) of the other insurance provided to such **Acquired Registered Representative** by the **Insurer's** affiliate.

5.    The definition of **"Retroactive Date**" is deleted in its entirety and replaced with the following;

      (1)    with respect to each **Broker-Dealer**, the date set forth as such in any endorsement to this policy; and

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

(2) with respect to an **Acquired Registered Representative**, the first date of contract or employment by any **Prior Broker-Dealer**.

6. Solely with respect to an **Acquired Registered Representative First Enrollment Date** means any date on or after 11/02/2018 that a **Registered Representative** first enrolled for coverage under this policy issued by the **Insurer**.

7. Notwithstanding anything to the contrary, this policy does not apply to any **Claim** for **Loss** under Coverage B against the **Acquired Registered Representative** for the rendering or failure to render **Professional Services** on behalf of a **Prior Broker-Dealer**, unless such **Claim** would have otherwise been covered under all other terms and conditions of this policy.

8. **Acquired Registered Representative** means any **Registered Representative** who contracted with the **Broker-Dealer** (other than a **Prior Broker-Dealer**) as part of the Advisor Group acquisition of Signator Investors, Inc and whose name is on file with the Broker listed in Item 7 of the Declarations or the Insurer.

9. Regardless of anything in the policy to the contrary, any **Acquired Registered Representative Claim** shall be subject to the Sublimit of Liability stated in Item 1 (b) of the Schedule of Sublimits.

10. **Acquired Registered Representative(s) Claim** means any **Claim:**

    (1) made against one or more **Acquired Registered Representative** and not a **Broker-Dealer**, and

    (2) alleging, arising out of based upon or attributable to in whole, the **Wrongful Acts** or any **Interrelated Wrongful Acts**  of such **Acquired Registered Representative(s)** in connection with the purchase, sale or servicing of any **Life Product,** occurring prior to the **First Enrollment Date.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

President

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Everest National Insurance Company**
**Everest Indemnity Insurance Company**
**Everest Security Insurance Company**
**Everest Reinsurance Company**



| Claim Reporting Guidelines |
| --- |

The Everest Claim Department is dedicated to providing prompt, thorough and professional claims service. Timely submission of Loss Notices complies with the terms and conditions of your policy and assists us in providing quality service to our policyholders.

**The preferred method for notifying Everest of a claim would be via e-mail.** However, Loss Notices may be submitted via mail, facsimile or e-mail. If immediate attention is needed, e-mail notification is strongly recommended.

**By E-mail:**
    Claims E-mail:  **everestnationalnjclaim@everestre.com**

**By Mail:**
    **Casualty Claims Department**
    **Everest National Insurance Company**
    **P.O. Box 830**
    **477 Martinsville Road**
    **Liberty Corner, NJ  07938**

**By Facsimile:**
    **Fax Claims:        (866) 283-4856**

**Consult Your Policy for Loss Reporting Requirements**

Your policy identifies the information to be submitted with a First Notice of Loss. Additionally, the following information/documentation will always be helpful and often necessary in assisting us with our evaluation:

- Citing Everest's policy, or claim number, in all correspondence
- Providing a copy of any lawsuit, demand for arbitration or mediation, a governmental agency notice, claim letter or any similar notice
- Sending a copy of any internal reports related to the claim
- Copies of status reports prepared by your defense counsel and/or your claim handler

Everest will acknowledge each First Notice of Loss, initiate contact with you, and will request any additional information that may be needed. Everest will identify the claim professional responsible for handling your reported loss and forward their specific contact information to you. If you become aware of any subsequent information that may impact your claim, you should immediately send it to your assigned claim professional.

If you have questions or would like to discuss a specific loss with one of our claim professionals, please feel free to contact us. Thank you.

*This guideline is merely for illustrative purposes and does not purport to address every situation or circumstance that may arise. Notwithstanding any statements made herein, nothing contained in this guideline is intended to replace, modify or waive any terms, conditions or warranties contained in the policy. Everest expressly reserves and does not waive any of its rights and protections afforded under the policy.*